[Cite as *Thorbahn Ents., L.L.C. v. Ohio Dept. of Taxation*, 2021-Ohio-4457.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Thorbahn Enterprises, LLC, | : | |
| Plaintiff-Appellant, | : | No. 21AP-18 |
| | | (Ct. of Cl. No. 2019-847JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Taxation, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 16, 2021

**On brief:** *Mockensturm, Ltd., Mark M. Mockensturm, Brandon M. Rehkopf, Blanca N. Wheeler*, and *Kevin C. Urtz,* for appellants. **Argued:** *Brandon M. Rehkopf,* and *Kevin C. Urtz.*

**On brief:** *Dave Yost*, Attorney General, *Peter L. Jamison,* and *Anne Berry Strait,* for appellee. **Argued:** *Anne Berry Strait.*

APPEAL from the Court of Claims of Ohio

DORRIAN, P.J.

{¶ 1} Plaintiff-appellant, Thorbahn Enterprises, LLC ("Thorbahn")[1] appeals a December 14, 2020 judgment entry of the Court of Claims denying Thorbahn's motion for summary judgment and granting the motion for summary judgment filed by defendant-appellee, Ohio Department of Taxation ("Department"). For the reasons that follow, we affirm.

**I. Facts and Procedural History**

{¶ 2} This cause of action arises from a sales tax audit ("audit"), pursuant to R.C. Chapter 5703, commenced by the Department of Thorbahn's business, Tina's Country

---

[1] Tina Thorbahn is the sole member of Thorbahn Enterprises, LLC, which was formed by Tina Thorbahn in December 2001. Thorbahn will be used to refer to both Tina Thorbahn and Thorbahn Enterprises, LLC.

Market ("the Market"), a business owned and operated by Thorbahn. The audit was conducted on behalf of the Department by tax auditor agent[2] April Hackett ("auditor"). The auditor notified Thorbahn of the audit, and correspondence dated November 29, 2016 requested certain records for review related to the identified audit period: July 1, 2013 through September 30, 2016.

{¶ 3} Thorbahn initially provided records from 2013, 2014, and 2015 to the auditor. Upon review of Thorbahn's records, the auditor determined Thorbahn did not provide complete and accurate records of net taxable sales and tax collected as required by R.C. 5739.11. From the review, the auditor was able to determine that Thorbahn was remitting less sales tax than she collected by comparing monthly sales tax returns filed with the state to cash register tapes, also known as Z-tapes, that were provided by Thorbahn. The auditor proceeded with the audit according to an alternative method known as a markup analysis. A block sample period of January 1 through December 31, 2015 would be used to calculate taxable sales using the markup analysis utilizing Thorbahn's records from 2015.

{¶ 4} On January 17, 2017, the auditor met with Thorbahn at the Market and presented Thorbahn with a letter entitled ten-day letter and attached to the ten-day letter was a memorandum of agreement recommending the block sample audit period and markup analysis.[3] Although the correspondence provided ten days for Thorbahn to respond with a suggestion for an alternative method to calculate any outstanding audit liability, Thorbahn did not respond.

{¶ 5} On March 16, 2017, a notice of assessment was sent to Thorbahn which certified $80,829.30 in taxes were due, in addition to pre-assessment interest and assessment penalty tax, totaling $126,591.81 as the amount owed.[4] On December 14, 2018, a final determination was made pursuant to a petition for reassessment being filed by

---

[2] According to the auditor's deposition testimony, tax auditors are now referred to as "tax examiners." (Hackett Depo. at 11.)

[3] We note the transcript indicates this document was marked as exhibit E, however, an exhibit sticker was never placed on the document, therefore the record reflects this document is a part of exhibit D.

[4] We note the transcript indicates this document was marked as exhibit F, however, an exhibit sticker was never placed on the document, therefore the record reflects this document is a part of exhibit D.

Thorbahn pursuant to R.C. 5739.13.[5]  The final determination granted in part Thorbahn's request for remission of penalty by a 15 percent reduction, resulting in an adjusted assessment of $98,301.41.

{¶ 6}   On July 29, 2019, Thorbahn filed a complaint in the Court of Claims against the Department alleging the Department frivolously disregarded provisions of R.C. Chapter 5739 and/or rules of the tax commissioner adopted under the applicable chapters when it completed its audit of the Market.  Thorbahn alleged that as a result of the Department's conduct, Thorbahn suffered damages in the form of an unreasonably high tax assessment that was incorrectly calculated and, further, that the Department did not consider actual sales from the Market.  Thorbahn requested compensatory damages as a result of the Department's alleged conduct and reasonable costs of litigation, including attorney fees. The Department filed an answer on August 23, 2019 that ultimately denied Thorbahn was entitled to any relief.

{¶ 7}   After a period of discovery, Thorbahn filed a motion for summary judgment on October 7, 2020.  Thorbahn moved for summary judgment asserting there was no genuine issue of material fact remaining, and based on the undisputed facts, reasonable minds could only conclude that the auditor frivolously disregarded the applicable Ohio statutes and the Department's own internal procedures when completing the audit of the Market, and therefore Thorbahn was entitled to summary judgment.  The Department filed its own motion for summary judgment on October 8, 2020 asserting Thorbahn could not establish that the auditor "frivolously disregarded" any relevant section of the Ohio Revised Code or rule, therefore Thorbahn's claim must fail.  Thorbahn filed a memorandum in opposition to the Department's motion for summary judgment on October 21, 2020.  The Department also filed a response in opposition to Thorbahn's motion for summary judgment which was filed October 27, 2020.  Thorbahn filed a reply brief in support of summary judgment on November 3, 2020 and the Department filed a reply in support of their motion for summary judgment the following day.

{¶ 8}   The Court of Claims issued a decision on December 14, 2020 that found when construing the evidence in favor of Thorbahn, reasonable minds could only conclude

---

[5] We note the transcript indicates this document was marked as exhibit G, however, an exhibit sticker was never placed on the document, therefore the record reflects this document is a part of exhibit D.

Thorbahn failed to demonstrate an actionable claim against the Department pursuant to R.C. 5703.54(A), and further that the Department was entitled to judgment because under R.C. 5703.54 there was no material fact that might affect the outcome of Thorbahn's claim against the Department. Pursuant to its judgment entry filed December 14, 2020, the court denied Thorbahn's motion for summary judgment and granted the Department's motion for summary judgment.

## II. Assignments of Error

{¶ 9}  Appellant appeals and assigns the following two assignments of error for our review:

> [I.] The Trial Court erred in granting summary judgment in favor of Appellee.
>
> [II.] The Trial Court erred in denying Appellant's Motion for Summary Judgment.

## III. Discussion

{¶ 10}  In her first assignment of error, Thorbahn asserts the Court of Claims erred by granting summary judgment to the Department. In her second assignment of error, Thorbahn asserts the court erred by denying summary judgment to Thorbahn. We will address Thorbahn's assignments of error together.

### A. Standard of Review

{¶ 11} We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the non-moving party. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of

the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

{¶ 12} Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory allegations, but, instead, must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the non-moving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

**B. Analysis**

{¶ 13} Thorbahn filed her complaint against the Department pursuant to R.C. 5703.54, which provides:

> (A) A taxpayer aggrieved by an action or omission of an officer or employee of the department of taxation may bring an action for damages in the court of claims pursuant to Chapter 2743. of the Revised Code, if all of the following apply:
>
> (1) In the action or omission the officer or employee frivolously disregards a provision of Chapter 5711., 5733., 5739., 5741., or 5747. of the Revised Code or a rule of the tax commissioner adopted under authority of one of those chapters;
>
> (2) The action or omission occurred with respect to an audit or assessment and the review and collection proceedings connected with the audit or assessment;
>
> (3) The officer or employee did not act manifestly outside the scope of the officer's or employee's office or employment and did not act with malicious purpose, in bad faith, or in a wanton or reckless manner.

Thorbahn and the Department agree that the second and third elements of R.C. 5703.54(A), as provided above, were met.  *See* R.C. 5703.54(A)(2) and (3).

{¶ 14} Therefore, left for consideration is whether, pursuant to R.C. 5703.54(A)(1), the auditor frivolously disregarded R.C. Chapter 5739 or a rule of the tax commissioner adopted under one of those chapters when the tax auditor conducted the sales and use audit of the Market.  Thorbahn argues the auditor's determination that Thorbahn failed to provide complete and accurate sales records to verify the accuracy of figures reflected on Thorbahn's tax returns contradicted existing law, and cannot be supported by a good-faith argument for an extension, modification, or reversal or existing law. *See* R.C. 5703.54(A)(1).

{¶ 15} Prior to reviewing the record regarding Thorbahn's claim that the auditor's determination frivolously disregarded a provision of R.C. Chapter 5739 or a relevant rule, we must first determine if a genuine issue of material fact remains.  *See* Civ.R. 56(C).

{¶ 16} Thorbahn argues the auditor's determination that she failed to provide adequate sales records to verify the accuracy of figures reflected on Thorbahn's tax returns as required by R.C. 5739.11 and Ohio Adm.Code 5703-9-02 constitutes frivolous disregard. In support of her argument, Thorbahn first contends the records she provided to the auditor were statutorily sufficient and asserts the following arguments in support: (1) the Z-tapes provided by Thorbahn are acceptable primary records pursuant to Ohio Adm.Code 5703-9-02(A)(1); (2) the Z-tapes provided by Thorbahn were adequate pursuant to Ohio Adm.Code 5703-9-02(B)(1); (3) the auditor's basis for finding Thorbahn's records were inadequate is not supported by the record; and (4) Thorbahn provided voluminous other records pursuant to Ohio Adm.Code 5703-9-02(A). We will address these arguments in turn below.

{¶ 17} The requirements for records pursuant to R.C. 5739.11 provide "[e]ach vendor shall keep complete and accurate records of sales, together with a record of the tax collected on the sales, which shall be the amount due under sections 5739.01 to 5739.31 of the Revised Code, and shall keep all invoices, bills of lading, and other such pertinent documents."

{¶ 18} In addition to the above requirements, Ohio Adm.Code 5703-9-02 provides the following as to the maintenance of records:

> (A)
>
> Each vendor must maintain complete, accurate and adequate records which include both:
>
> (1) Primary records such as purchase invoices, bills of lading, sales invoices, guest checks, exemption certificates, tax payment receipts, and cash register tapes;
>
> (2) Secondary records such as bank deposit receipts and day books, journals, or any other records in which accumulated data is recorded. Secondary records must be supported by complete primary records.
>
> (B) Records are adequate if the records demonstrate to the tax commissioner that the vendor collected the proper amount of sales tax due on the vendor's taxable sales.

{¶ 19} In support of her argument that the records provided to the auditor were statutorily adequate, Thorbahn first asserts the Z-tapes provided are acceptable primary records pursuant to Ohio Adm.Code 5703-9-02(A)(1). Thorbahn testified sales tax is tracked in the Market using Z-tapes. At the conclusion of each business day, a Z-tape is printed from the cash register and attached to a daily cash record sheet and settlement for the credit card system. All three records are maintained together by date, filed, and retained by Thorbahn. Each month Thorbahn determines her gross sales, taxable and non-taxable sales and amount of tax to be paid from her retained Z-tapes. The Market is open for business every day except Christmas Day. Thorbahn asserts she provided 364 Z-tapes for 2015 to the auditor, a tape for each day the Market was open for business.

{¶ 20} As provided in Ohio Adm.Code 5703-9-02(A)(1), and as argued by Thorbahn, cash register tapes are considered a primary record.[6] However, a primary record must also be complete. *See* R.C. 5739.11 and Ohio Adm.Code 5703-9-02(A)(1). Here, the auditor found that Thorbahn did not provide complete records as required by R.C. 5739.11 and Ohio Adm.Code 5703-9-02. As argued by Thorbahn, her records were a statutorily adequate

---

[6] We note that correspondence from the Department dated November 29, 2016 notified Thorbahn that a sales and use tax audit had been commenced on the Market and further requested records from Thorbahn, which included primary and secondary detailed sales records, such a Z-tapes.

primary record and asserts her Z-tapes were complete, and further contends that the record does not indicate otherwise.

{¶ 21} In support of her argument, Thorbahn first points to a receipt of taxpayer records ("receipt") dated December 15, 2016. (Thorbahn's Mot. Sum. Jgmt., Ex. D.) The receipt indicates Thorbahn provided Z-tapes for 2015 to the auditor, in addition to other records. The bottom portion of the receipt reflects signatures of the auditor and Thorbahn and states the listed records were returned to Thorbahn on the date reflected, January 17, 2017. We observe that the receipt does not note records were missing or incomplete.

{¶ 22} Next, Thorbahn turns to the audit remarks prepared by the auditor and argues the auditor never stated Thorbahn provided less than an entire year of Z-tapes. The audit remarks made by the auditor aver: "Auditor Hackett also reviewed January thru August Z-tapes for 2015 (Note- of the z-tapes that were provided, several could not be read and a couple were missing)." (Hackett Depo., Ex. AR at 4.) These audit remarks were clarified, however, when the auditor testified that she was provided with less than one year of Z-tapes from Thorbahn, and more specifically, that she did not review Z-tapes for September through December 2015 because Z-tapes for those months were not provided by Thorbahn.[7]

{¶ 23} Lastly, Thorbahn asserts that internal e-mails within the Department and correspondence with Thorbahn lack any indication that specific months of Z-tapes were missing from the records provided by Thorbahn. We note that the audit remarks reflect the auditor did communicate by e-mail with Thorbahn regarding instances of Z-tapes not corresponding to the daily cash sheet to which the Z-tape was attached. In response, Thorbahn provided direction regarding the issue, but we also note this issue did not appear to be a basis for the auditor's decision regarding the adequacy of Thorbahn's records for the audit.

{¶ 24} We acknowledge Thorbahn's argument that the auditor did not explicitly state in her audit remarks that Z-tapes from September through December 2015 were not provided. However, the auditor did state in her remarks that she "also reviewed January thru August Z-tapes for 2015 (Note – of the z-tapes that were provided several could not be

---

[7] We note the exhibit identified as exhibit 6 in the testimony was not marked as such.

read and a couple were missing). * * * It should be noted that several of the Z-tapes did not correspond with the 'daily cash sheet' that it was attached to.  For example, there were two z-tapes for July 31, 2015, one was attached to the 'daily cash sheet' for July 31, 2015 and one was attached to the 'daily cash sheet' for August 1, 2015.  Auditor Hackett spoke to Ms. Thorbahn concerning this issue and Ms. Thorbahn was unaware of this issue and stated that the correct date would be the date of the 'daily cash sheet' not the date on the Z-tape." (Hackett Depo., Ex. AR at 4; *see also* Hackett Depo. at 31, 40-42, and Ex. 6 at 4.)

{¶ 25} Thorbahn stated generally in her deposition that she provided records for 2014, 2015, and 2016 to the auditor, including Z-tapes.  Specifically regarding the Z-tapes she responded "yes" when asked "[a]nd Z tapes which we've talked about.  And you had a complete set of -- by my count, 364 Z tapes for Ms. Hackett?"  She further responded "[r]ight," when further asked "[a]nd [the Z-tapes] would have been attached to the daily cash record with the credit card slips."  (Thorbahn Depo. at 48-49.)  However, during her deposition, Thorbahn was shown exhibit I, which she identified as a copy of the daily cash record, credit card receipts, and the settlement from the credit card.  Thorbahn indicated that a Z-tape should also be attached to the daily cash records sheet, but did not represent that a Z-tape was attached to exhibit I.  The following exchange occurred:

> Q. And should that Z tape be attached to the daily cash records sheet?
>
> A. Yes.
>
> Q. I will represent to you that there is not one attached for this date. Do you have any idea why?
>
> A. No.
>
> Q. Okay. I will also tell you that in our discovery we've received less than two dozen Z tapes for the entire year of 2015. Did you provide the entire year's worth of Z tapes to your attorney?
>
> A. Yes.
>
> Q. So as you sit here, you don't know why we didn't receive them?

A. No. You should receive the daily cash record, a copy of the credit cards, the credit card settlement and the Z tape for that day.

Q. And that should all be in one attachment - -

A. It's all - -

Q. -- basically?

A. Yeah. We paperclip that all together.

(Thorbahn Depo. at 24-25.)

{¶ 26} We have reviewed exhibit I and note that it contains one page dated January 4, 2015 titled "daily cash records" and nine pages with illegible copies of what we presume to be, according to Thorbahn's deposition testimony regarding the same, credit card receipts and the settlement from the credit card. We cannot confirm from the record before us that the specific Z-tapes Thorbahn provided to the auditor were complete or adequate.[8]  Finally, we note Thorbahn's lack of response or explanation in her deposition

---

[8] We note exhibit C, the supplemental answers which the Department received from Thorbahn's counsel regarding discovery requests, Thorbahn testified in her deposition that she had reviewed the supplemental answers and that to the best of her knowledge the factual statements therein were true and accurate. In exhibit C, Thorbahn's counsel stated:

Regarding the document requests, as stated in my 3/20/20 email, our client provided us with three large bankers boxes of the records provided to the auditor. They include purchase invoices, sales invoices, guest checks, tax payment receipts, and cash register tapes (aka Z tapes), bank deposit receipts, accumulated sales records, coupons, and summaries. These records were all in the possession of auditor Hackett for at least 7 days. It is unknown to [Thorbahn] how many of those records she may have copied or digitized.

Counsel for [Thorbahn] is currently in the process of scanning these records into our system, so that digital copies can be provided pursuant to the discovery requests. Uploaded along with this letter you will find the records that have been scanned so far. We are sincerely digitizing them as fast as possible with the limited staffing we have available during this COVID-19 crisis. If you would like the remaining undigitized records sooner, we are happy to arrange to have the boxes dropped off at your office and your staff is welcome to scan or copy the remaining records. Otherwise, we are willing to continue this pro[j]ect and provide the additional records as soon as they can be digitized. Please contact me after review of this letter and the attached documents to discuss which option you would like to pursue.

(Thorbahn Depo., Ex. C at 2.) We note as well that there is no indication that counsel made a Civ.R. 56(E) request in response to the Department's motion for summary judgment to seek a continuance in order to provide copies of all the documents in the three large bankers boxes. We do not have in the record before us all the documents in the three large bankers boxes provided to the auditor.

testimony regarding exhibit I not containing any Z-tapes contradicts her deposition testimony that 364 days of Z-tapes were provided.

{¶ 27} In further support of her argument that the records provided to the auditor were statutorily adequate, Thorbahn next argues that the Z-tapes as provided were adequate pursuant to Ohio Adm.Code 5703-9-02(B)(1).

{¶ 28} Ohio Adm.Code 5703-9-02(A)(2) requires that records must be found to be adequate, which as defined would require that the records demonstrate to the tax commissioner that the vendor collected the proper amount of sales tax due on the vendor's taxable sales. The adequacy of a vendor's primary and secondary records shall be evaluated, pursuant to Ohio Adm.Code 5703-9-02(B)(1), which states: "In order to be adequate, primary records such as sales invoices and cash register tapes for taxable sales must distinguish between taxable and nontaxable items. Further, the primary records *must separately state the total amount of each transaction and the tax charged on the transaction.* These amounts must [be] accumulated and recorded in a secondary record." (Emphasis added.)

{¶ 29} As noted above, review of the record reflects that Z-tapes were not filed by Thorbahn or the Department in support of their respective motions for summary judgment or as part of the depositions of Thorbahn and the auditor. However, Thorbahn did provide the following testimony describing the Z-tapes produced in the Market:

> Z tape is done daily out of our cash register. It reports everything that goes into the cash register. When it prints out, it will give you - - we have it set up so that it's either dairy, pop, beer, cigarettes, deli because we have broasted chicken. It will tell us the amount of those categories that we sold every day. It would go down and give you a total of the sales, the amount taxable, the amount nontaxable and the amount of tax charged for that day.

(Thorbahn Depo. at 22.)

{¶ 30} Although Thorbahn's Z-tapes are a daily report of everything that goes into the cash register, the Z-tape reflects amounts from categories of items sold on a particular day, providing the total of the sale, the amount taxable, the amount non-taxable and the

amount of tax charged for that day. (*See* Thorbahn Depo. at 22.)[9] This description contrasts with Thorbahn's argument that her Z-tapes distinguished between taxable and non-taxable items and separately stated the total amount of each transaction and tax charged on the transaction, thus meeting the requirement of adequacy as provided in Ohio Adm.Code 5703-9-02(B). Without a Z-tape provided for review, we are left with Thorbahn's testimony regarding the Z-tapes from the Market which does not comport with Ohio Adm.Code 5703-9-02(B)(1) as described.

{¶ 31} By asserting that the Z-tapes were adequate, Thorbahn argues that the auditor's basis for finding Thorbahn's records were inadequate is not supported by the record.

{¶ 32} On review of Thorbahn's records, the auditor found Thorbahn's Z-tapes as provided did not meet the adequacy requirement because they were not sufficiently specific for a sales tax audit. When asked why Thorbahn's Z-tapes were not accurate enough to use in the sales tax audit, the auditor responded:

> [T]he z tapes only break[] things down very generically. So if I were to go in the carryout and purchase, say, like, a 20 ounce Coke, those Z tapes wouldn't say I purchased a 20 ounce coke, it would probably say a pop.
>
> * * *
>
> And unfortunately with Z tapes, you can't verify what was a pop and what wasn't a pop purchase, just like you can't verify anything else. So if something that rang under a dairy category, you couldn't verify that maybe a pop got accidentally recorded as a dairy product. And so in order to accurately determine if sales tax was appropriately charged on taxable items, you can't use those because you can't determine what was actually purchased.
>
> * * *
>
> That was the UPC. So if you scan an item in with a UPC and you can provide a UPC listing of all of the UPCs that you sell and how they're coded in your system as taxable or exempt. If you can't provide something like that, there's -- as far as I

---

[9] We note Thorbahn's testimony reflects that collection of sales tax on the sale of cigarettes purchased with a coupon at the Market may have varied due to employees of the Market keying in the sale price, rather than ringing in the pack of cigarettes and then applying the coupon.

know, there's no other way to determine the -- you know, if
sales tax has been correctly charged.

(Hackett Depo. at 29-30.)

{¶ 33} Thorbahn first supports her argument that the auditor's decision is not supported by the record by arguing that the explanation given by the auditor provides a hypothetical, rather than issues related to Thorbahn's records as provided. Although we agree with Thorbahn that the auditor explained her determination; however, the hypothetical as given by the auditor appears to be an illustration of the issues that result from a sales record denoting categories of purchases as opposed to itemized sales as required by Ohio Adm.Code 5703-9-02(B)(1).

{¶ 34} Thorbahn next argues the auditor never stated that Thorbahn's Z-tapes failed to distinguish between taxable and non-taxable sales. Thorbahn supports her argument by asserting the auditor's testimony reasons that the content, not the quantity, of Thorbahn's Z-tapes was the basis for her finding. Thorbahn cites the audit remarks where the auditor states several of the Z-tapes could not be read and a couple were missing; however, Thorbahn's argument does not acknowledge the complete statement made by the auditor. The auditor's complete statement as reflected in the audit remarks stated: "(Note- *of the tapes that were provided* several could not be read and a couple were missing.)" (Emphasis added.) (Thorbahn's Mot. for Sum. Jgmt., Ex. F at 4.)

{¶ 35} On review of correspondence provided to Thorbahn and the audit remarks written by the auditor, we agree that the auditor did not explicitly state Thorbahn's Z-tapes failed to distinguish between taxable and non-taxable sales. The auditor did state in her deposition, however, that although a UPC code is not the only way to accurately track sales tax, "there may be other ways[,] [*b*]*ut in this particular carryout*, I don't know of another way. The Z tapes weren't sufficient." (Emphasis added.) (Hackett Depo. at 31.) Furthermore, the auditor stated Thorbahn did not provide complete and accurate records in accord with R.C. 5739.11 and Ohio Adm.Code 5703-9-02 in correspondence to Thorbahn.

{¶ 36} Specifically, the Department's correspondence dated January 17, 2017 regarding the sales and tax use audit notified Thorbahn that the initial examination was complete and the examination revealed untaxed taxable sales of tangible personal property

and/or services for which no exception or exemption has been established.[10] Preliminary proposed findings were attached. The correspondence requested that Thorbahn review and respond to the proposed preliminary audit results within 30 days. In addition, Thorbahn was asked to point out any errors, provide any new and pertinent information, and/or object to or agree with the proposed findings so that the responses could be addressed as part of the final review process. The record does not reflect that Thorbahn responded to this request.

{¶ 37} Thorbahn was also presented with a ten-day letter notifying her that she did not provide complete and accurate sales records to verify the accuracy of the figures reflected in her tax returns as required by R.C. 5739.11 and Ohio Adm.Code 5703-9-02. Thorbahn was further notified that she had ten days to respond if she did not agree with the proposed audit sample and recommended inventory markup procedure which was attached to the correspondence and entitled as a memorandum of agreement. Thorbahn testified that she did not respond to the ten-day letter, but that she did consult with her tax accountant and legal counsel. (Thorbahn Depo. at 27-28.)[11]

{¶ 38} Thorbahn next contends that she provided voluminous other records, pursuant to Ohio Adm.Code 5703-9-02(A), in her final argument in support that her records were statutorily adequate. Specifically, Thorbahn asserts the auditor did not provide an explanation why the additional records she provided, in conjunction with the Z-tapes, did not accurately show sales tax collected.

---

[10] We note that although this correspondence is in the record, this specific correspondence was not testified to by Thorbahn, and only briefly by the auditor when she testified that Thorbahn would have been notified by a 30-day letter that the audit could not be performed with the records provided.

The correspondence states the audit examination included review of purchase downloads, purchase invoices, and Z-tapes for the period of January through December 2015. The auditor did not note that Z-tapes from September through December 2015 were missing. Further, the auditor does not provide any explanation as to the reasoning or methodology used to reach the conclusion that the examination of the listed records revealed untaxable sales of tangible personal property and/or services. A statement from the auditor revealing that the Z-tapes were incomplete and did not reflect the total amount of each transaction along with the tax charged would assist a taxpayer in understanding their responsibility. *See* Ohio Adm.Code 5703-9-02(B)(2). However, Ohio Adm.Code 5703-9-02(A) places the burden of proof on each vendor to show what part, if any, of their gross receipts from sales resulted from non-taxable sales.

[11] Thorbahn testified that she spoke with her tax accountant who felt the methodology as proposed by the auditor was "probably okay" and legal counsel who informed Thorbahn the methodology was correct.

{¶ 39} Thorbahn's affidavit filed with her motion for summary judgment averred she provided to the auditor Z-tapes, daily cash records, credit card summaries, purchase records, and bank deposit slips for use in the audit. As noted above, the receipt of taxpayer records dated December 15, 2016 denoted the following records were received by the auditor from Thorbahn: purchase invoices for 2015, Z-tapes for 2015, police reports from 2013-2015, and a tax return for 2015. However, the record before us contains minimal evidence of records that were provided to the auditor. Thorbahn's motion for summary judgment included an affidavit that referenced a sample of bank deposit slips provided to the auditor. A daily cash record and credit card records from January 4, 2015 were reviewed during Thorbahn's deposition.

{¶ 40} Under Ohio Adm.Code 5703-9-02(B)(1), primary records are found to be adequate when they distinguish between taxable and non-taxable items and must state separately the total amount of each transaction and tax charged on each transaction. Those amounts must then be accumulated and recorded in a secondary record. Ohio Adm.Code 5703-9-02(B)(1). Aside from assertions, Thorbahn has not identified records that distinguish between taxable and non-taxable items and state separately the total amount of each transaction and tax charged on each transaction. *See* Ohio Adm.Code 5703-9-02(B)(1).

{¶ 41} With regard to the other records provided to the auditor, Thorbahn contends the auditor did not review the bank records provided. As stated above, Thorbahn provided a sample of the bank deposit slips that were provided to the auditor. Ohio Adm.Code 5703-9-02(A)(2) identifies bank deposit receipts as secondary records. However, in order to comply with Ohio Adm.Code 5703-9-02(A)(2), secondary records must be supported by *complete primary records*. As addressed above, Thorbahn's Z-tapes were not considered a complete or adequate primary record. *See* Ohio Adm.Code 5703-9-02(A)(1) and (2). Without further argument or evidence, we cannot examine what effect, if any, the additional records would have on Thorbahn's sales tax audit.

{¶ 42} As stated herein, pursuant to Civ.R. 56(C), Thorbahn bore the initial burden when she moved for summary judgment to identify portions of the record that demonstrate an absence of a genuine issue of material fact. *Dresher* at 293. Thorbahn asserts in her motion for summary judgment that no genuine issue of material fact remains. However, in

support of her first assignment of error, Thorbahn argues the Court of Claims erred by granting the Department's motion for summary judgment because as Thorbahn argues, at a minimum, there remains a material factual dispute between what the auditor described in her report, the reasoning provided in her deposition testimony, and Thorbahn's evidence as to what records it provided to the auditor, and therefore summary judgment in favor of the Department was in error. In support of her second assignment of error, Thorbahn presents essentially the same argument as in her first assignment of error, however, points to the discrepancy as a basis to find the records Thorbahn provided were adequate. Specifically, Thorbahn argues the Court of Claims erred by denying her motion for summary judgment because the auditor did not mention Z-tapes were missing and further provided no allegation in the audit records that Thorbahn's Z-tapes failed to distinguish between taxable and non-taxable items, or state the total amount of each transaction and the tax charged thereon, and therefore the record clearly shows Thorbahn's records were statutorily adequate.

{¶ 43} On review of the record, we cannot find Thorbahn's argument persuasive. Based on the description of the Z-tapes testified to by Thorbahn, and lack of evidence in the record to refute the statements of the auditor, we cannot find that the Z-tapes provided by Thorbahn distinguished between taxable and non-taxable items nor can we find Thorbahn's Z-tapes separately stated the total amount of each transaction and the tax charged on the transaction as required by Ohio Adm.Code 5703-9-02(B)(1). The hypothetical given by the auditor during her testimony provided illustration of the need for transactional sales information, not generalized categories of sales, which according to the description provided by Thorbahn is what her Z-tapes provided.

{¶ 44} On the record before us, further, we cannot confirm Thorbahn provided 364 Z-tapes to the auditor from 2015. Although the audit remarks do not explicitly state Z-tapes from September through December 2015 were missing, the auditor's testimony that those specific months of Z-tapes were not reviewed because they were not provided is clear. Also, as noted above, the auditor's testimony regarding 364 Z-tapes is contradicted by Thorbahn's lack of explanation for missing Z-tapes during her deposition. Again, without some evidence to contradict the auditor's testimony, we cannot find otherwise. Therefore, on de novo review, we find the record does not demonstrate a genuine issue of material fact.

{¶ 45} In addition to demonstrating that no genuine issue of material fact remains, Civ.R. 56(C) requires the moving party must also prove they are entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. As discussed earlier, the parties agreed that at issue for consideration is whether, pursuant to R.C. 5703.54(A)(1) the auditor frivolously disregarded a provision of R.C. Chapter 5739 or a rule of the tax commissioner adopted under one of those chapters when the auditor conducted the sales and use audit of the Market. The Department argued in its motion for summary judgment that Thorbahn could not establish that the auditor frivolously disregarded any relevant statute or rule, and therefore her claim must fail as a matter of law.

{¶ 46} Frivolous disregard, as it is used in R.C. 5703.54(A)(1), is defined both statutorily and through case law. To find frivolous conduct on behalf of the auditor here, her conduct must meet one of the following provisions under R.C. 5703.54(F):

> (1) It obviously serves merely to harass or maliciously injure the state or its employees or officers if referring to the conduct of a taxpayer, or to harass or maliciously injure the taxpayer if referring to the conduct of the tax commissioner;
>
> (2) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

The Supreme Court of Ohio defined "disregard" as it is applied in R.C. 5703.54(A)(1) as " 'to give no thought to: pay no attention to.' " *Basic Distrib. Corp. v. Ohio Dept. of Taxation*, 94 Ohio St.3d 287, 292 (2002), quoting *Webster's Third New International Dictionary* 655 (1986).

{¶ 47} Thorbahn argues that reasonable minds can only conclude that the auditor frivolously disregarded applicable Ohio law and the Department's internal procedures. In support, Thorbahn asserts the following: (1) Thorbahn's sales records were statutorily adequate, (2) the auditor violated internal Department procedures, and (3) the auditor could not support use of an alternate audit procedure.

{¶ 48} In determining whether Thorbahn's claim asserting the auditor's finding constitutes frivolous disregard, we look to the Supreme Court's holding in *Basic Distrib.* which provided the following guidance: "[I]n order for a taxpayer's claim to be actionable under R.C. 5703.54, the department must 'pay no attention to' a statute or rule, and its

disregard must be unsupportable in good faith under existing law." *Id.* at 292, quoting *Webster's.* The Supreme Court went on to clarify that a taxpayer's claim pursuant to R.C. 5703.54 shall not be based on an erroneous interpretation of a statute or rule, as that action would be remedied through the administrative appeal process.[12] *Id.*

{¶ 49} As discussed, the auditor found Thorbahn's records were inadequate for the audit because the Z-tapes did not distinguish between taxable and non-taxable items or state the total amount of each transaction and tax charged on the transaction. *See* Ohio Adm.Code 5703-9-02(B)(1). Adequacy of records was addressed by the Supreme Court in *Natl. Delicatessens, Inc. v. Collins*, 46 Ohio St.2d 333 (1976), where the court held, " 'the record-keeping requirements within R.C. 5739.11 must be construed in a manner which will allow the Tax Commissioner to determine if sales taxes which should have been charged by vendors were actually collected and remitted to the state Treasurer * * * [and] in order to be "adequate," a vendor's records must enable the Tax Commissioner to ascertain if the proper sales tax was collected according to law.' " *Id.* at 334, quoting *McDonald's v. Kosydar*, 43 Ohio St.2d 5, 8 (1975). The court went on to find cash register tapes provided by National Delicatessens were inadequate because the "tapes reveal only daily totals for each of three categories of sales. Such information is not sufficiently detailed to 'allow the Tax Commissioner to determine if sales taxes which should have been charged * * * were actually collected and remitted.' " *Id.*, quoting *McDonald's* at 8.

{¶ 50} *Natl. Delicatessens* based the finding on precedent in *McDonald's*, wherein the Supreme Court held "the cash register tapes only indicated the total price of each individual sale and the total amount of tax charged. There was no delineation showing what items were considered taxable or nontaxable, and no indication of which sales were for

---

[12] Specifically, the Supreme Court in *Basic Distrib.* held:

> Notably, this definition excludes a merely erroneous interpretation of a statute or rule by the department. Accordingly, if the complaint is in reality against the department's interpretation of a statute, then it is not actionable under R.C. 5703.54. To define the phrase "frivolously disregards" in a more liberal manner would muddle the difference between an erroneous interpretation or application of a statute, which is properly reviewed in an administrative appeal, and the frivolous disregard of a statute or rule, which is properly addressed under R.C. 5703.54. Further, a more liberal interpretation would conflict with the spirit of R.C. 5703.54, which is meant to provide a remedy separate from the administrative appeal process, but only where the action taken by the department frivolously disregards a statute or rule.

*Id.* at 292.

consumption on the premises as opposed to consumption off the premises." (Fn. omitted.) *McDonald's* at 8.[13]

{¶ 51} The findings of the Supreme Court in *Natl. Delicatessens* and *McDonald's* as to adequacy are similar to the findings as to adequacy found by the auditor here; Thorbahn's Z-tapes recorded categories of sales and did not reflect individual transactions.

{¶ 52} In further support of her argument that the auditor's decision regarding the adequacy of Thorbahn's records constitutes frivolous disregard, Thorbahn asserts the Court of Claims erred in its application of the Supreme Court case, *Basic Distrib.* to the facts presented in Thorbahn's case. Thorbahn argues the auditor did not know the statutes applicable to a sales tax audit, falling squarely within *Basic Distrib.*, where the court held "in order for a taxpayer's claim to be actionable under R.C. 5703.54, the department must 'pay no attention to' a statute or rule, and its disregard must be unsupportable in good faith under existing law." *Id.* at 292, quoting *Webster's*. Thorbahn argues the Court of Claims misapplied the definition of frivolous under R.C. 5703.54 as defined by the court in *Basic Distrib.*, which held frivolous "excludes a merely erroneous interpretation of a statute or rule by the department." *Id.*

{¶ 53} Thorbahn contends that the Court of Claims could not have found the auditor's interpretation to be merely erroneous because the auditor admitted she did not

---

[13] Both *McDonald's* and *Natl. Delicatessens* were cited by the Supreme Court of Connecticut in *Alexandre v. Commr. of Revenue Servs.*, 300 Conn. 566, 582 (2011), where the court concluded that detailed cash register tapes were required to document individual sales transactions, rather than aggregate, summary Z reports. *Alexandre* citing *McDonald's* at 8; *Natl. Delicatessens* at 334.

In addition to citing to precedent from Ohio, the court in *Alexandre* also cites cases from New York from which the court found similar persuasive holdings, specifically, those cases in which the court concluded auditors appropriately proceeded under alternative audit methodologies when taxpayers provided summary cash register receipts that did not provide individual transaction data. The court provided the following examples:

> *Matter of Licata v. Chu*, 64 N.Y.2d 873, 874, 476 N.E.2d 997, 487 N.Y.S.2d 552 (1985), the New York Court of Appeals concluded that the "auditor's use of a test period and markup audit to estimate the tax due from [taxpayers] was neither arbitrary nor without rational basis" when the "[taxpayers'] sales tax records have as their source cash register tapes which show only total sales and sales tax collected by categories" since the "auditor could not determine from the tapes available whether tax had been charged on all taxable items and whether the proper tax had been charged in each instance . . . ." *Cf. Matter of Raemart Drugs, Inc. v. Wetzler*, 157 App. Div. 2d 22, 24-25, 555 N.Y.S.2d 458 (1990) (summary cash register tapes were adequate records when cash register used was consistent with standard for drugstore business and there existed "essentially complete" set of other records permitting verification of store's sales).

*Alexandre* at 581-82.

know what statutes governed the adequacy of tax payer records and the Department does not have a policy that requires auditors to review the statutes they enforce. Thorbahn points to the auditor's report and testimony, as well as the record, to support her argument there lacks any analysis that would indicate that the auditor considered the statutory requirements. However, the auditor testified she has reviewed code sections governing sales tax audits, but may not have committed the law to memory. The audit remarks and testimony of the auditor, in conjunction with the description of Z-tapes given by Thorbahn, evidence that the auditor understood the sales audit to require sales records that distinguished between taxable and non-taxable items and separately stated the total amount of each transaction and the tax charged on the transaction. *See* Ohio Adm.Code 5703-9-02(B)(1).

{¶ 54} Thorbahn also contends that the hypothetical given by the auditor suggests the auditor preferred a UPC system, contrary to law and to the detriment of small businesses like the Market. Thorbahn points to Ohio Adm.Code 5703-9-02(A)(1), which provides cash register tapes are acceptable primary records. However, as explained above, primary records must also fulfill the requirement by being complete and adequate. *See* Ohio Adm.Code 5703-9-02(A)(1) and (2). Thorbahn believes that the findings made by the auditor will require small businesses such as the Market to invest in costly UPC pricing systems. The auditor's testimony reflects that UPCs are not the only way to accurately track sales tax, but that as to the Market, she did not know of another way; the Z-tapes provided were not sufficient. The auditor also testified that she has audited markets similar to Thorbahn's Market that were able to provide accurate sales records.

{¶ 55} Thorbahn next asserts the auditor disregarded internal department policy. She argues that the auditor's presentation of the memorandum of agreement, ten-day letter, and preliminary audit results during the same meeting, on the same day, regardless of the order presented was irresponsible, confusing, and a blatant violation of the Department's own audit policy. According to Department procedure:

> The Department and the taxpayer will enter into a Memorandum of Agreement outlining markup percentages, sampling methodology, and calculation of the sales tax due for the audit. Auditor drafts the Memorandum of Agreement and receives Audit Manager's approval prior to issuance to the taxpayer. A signed agreement must be obtained from the

> taxpayer or a Ten-Day Letter will be issued with the agreement prior to the auditor compiling and issuing preliminary results to the taxpayer.

(Hackett Depo., Ex. 1 at 2.)  The auditor does not disagree that she met with Thorbahn on January 17, 2017 and presented the memorandum of agreement, ten-day letter, and audit results on that day.  The auditor acknowledged that her preliminary results were made prior to either the memorandum of agreement being signed or the passing of ten days from delivery of the ten-day letter being delivered to Thorbahn.  The auditor testified her understanding of procedure regarding presentation of the documents was based on order of presentation rather than period of time. The auditor explained in Thorbahn's case, markup percentages were determined with Thorbahn during a walk-through of the Market in December 2016 and instead of sending the memorandum of agreement with the markup percentages via certified mail, the auditor opted to hand deliver.  The auditor maintained the procedure she employed in Thorbahn's case was in accord with departmental procedures because she provided the memorandum of agreement first, then the preliminary results.  The auditor further explained that the ten-day letter is only presented when a taxpayer will not sign a memorandum of agreement and having the ten-day letter ready in the event a signature is not obtained is a matter of efficiency.

{¶ 56} As argued by the Department, a claim pursuant to R.C. 5703.54(A) requires frivolous disregard of a provision of specific chapters of the Revised Code or of rules promulgated by the tax commissioner by an officer or employee. *See* R.C. 5703.54(A)(1). Thorbahn's argument addresses a procedure outlined by the Department and the Supreme Court in *Basic Distrib.* specifically excluded a mere erroneous interpretation of a statute or rule by the Department when the court defined frivolous disregard.  *Basic Distrib.* at 292.

{¶ 57} In support that the auditor's determination rose to frivolous disregard, Thorbahn contends the auditor could not support use of an alternate audit procedure. According to Ohio Adm.Code 5703-9-02(D): "If any vendor fails to maintain complete primary sales records which may be utilized in verifying the accuracy of the figures reflected in their secondary records and/or reported on their tax returns, the commissioner may audit and assess as provided in section 5739.13 of the Revised Code."

{¶ 58} Thorbahn argued in her motion for summary judgment that the auditor contradicted her assertion that Thorbahn's records were inadequate, yet detailed enough to determine that tax was underreported. During her review of Thorbahn's records, the auditor found Thorbahn's Z-tapes to break sales down generically, which was insufficient for a sales tax audit.  The auditor testified she believed she had a conversation with Thorbahn and explained that the Z-tapes were reviewed and used to determine if Thorbahn was reporting the same amount of sales tax as was being collected. The auditor made this determination by comparing what was discovered in the Z-tapes with Thorbahn's monthly sales tax returns filed with the state. However, because the auditor determined that Thorbahn's records were not adequate to perform the audit, the auditor proceeded to audit through an inventory markup procedure.

{¶ 59} The auditor testified that Thorbahn's purchase records were used to determine Thorbahn's sales, which involved recording all taxable purchases during the 2015 year under specific categories such as tobacco, beer, pop.  Once sales were determined, markup percentages that had been identified by Thorbahn and the auditor were to be applied to sales, which would then determine a taxable sales base.  The taxable sales base was compared to Thorbahn's sales tax remittance, with the resulting difference becoming the tax liability.

{¶ 60} Upon de novo review of the record and argument, we find Thorbahn fails to support her argument that the auditor's determination regarding her records and audit methodology were not warranted under existing law, and, further, we find no evidence to support Thorbahn's assertion that the auditor paid no attention to applicable law.  Under the facts of this case, we find that Thorbahn's claim was insufficient to meet R.C. 5703.54 because the auditor's determination and audit procedure did not constitute frivolous disregard as required by R.C. 5703.54(A)(1).

{¶ 61} Therefore, we find the Court of Claims did not err by granting the Department's motion for summary judgment, and, further, the Court of Claims did not err by denying Thorbahn's motion for summary judgment.

{¶ 62} Accordingly, we overrule Thorbahn's first and second assignments of error.

**IV. Conclusion**

{¶ 63} Having overruled Thorbahn's two assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

MENTEL, J., concurs.
KLATT, J., dissents.

KLATT, J., dissenting.

{¶ 64} Because I do not believe appellee met its burden to establish that there are no issues of material fact and that it is entitled to judgment as a matter of law, I respectfully dissent.

{¶ 65} The central question presented here is whether appellee demonstrated in its motion for summary judgment that appellant failed to provide adequate primary records for appellee to conduct a sales tax audit. R.C. 5739.11 states that "[e]ach vendor shall keep complete and accurate records of sales, together with a record of the tax collected on the sales, which shall be the amount due under sections 5739.01 to 5739.31 of the Revised Code, and shall keep all invoices, bills of lading, and other such pertinent documents." The administrative code clarifies this requirement. It provides that a vendor must maintain certain sales records, including:

> (1) Primary records such as purchase invoices, bills of lading, sales invoices, guest checks, exemption certificates, tax payment receipts, and cash register tapes;
>
> (2) Secondary records such as bank deposit receipts and day books, journals, or any other records in which accumulated data is recorded. Secondary records must be supported by complete primary records.

Ohio Adm.Code 5703-9-02(A)

{¶ 66} In addition, Ohio Adm.Code 5703-9-02(B)(1) provides:

> (B) Records are adequate if the records demonstrate to the tax commissioner that the vendor collected the proper amount of sales tax due on the vendor's taxable sales.
>
> (1) In order to be adequate, primary records such as sales invoices and cash register tapes for taxable sales must distinguish between taxable and nontaxable items. Further, the

> primary records must separately state the total amount of each transaction and the tax charged on the transaction. These amounts must [be] accumulated and recorded in a secondary record.

{¶ 67} Therefore, in order for a vendor's primary records to be adequate, they must: (1) distinguish between the sales of taxable and nontaxable items; and (2) separately state the total amount of each transaction and the tax charged on each transaction. Ohio Adm.Code 5703-9-02(B)(1).

{¶ 68} Appellant contends in its first assignment of error that appellee's motion for summary judgment does not establish that appellant failed to provide "adequate" primary records as defined by Ohio Adm.Code 5703-9-02(B)(1). The records primarily at issue are appellant's cash register tapes—known as "Z-tapes." Both parties seem to agree that Z-tapes are primary records. They disagree about whether the Z-tapes appellant provided were "adequate" primary records. Appellant contends the Z-tapes it provided were adequate because they distinguished between the sales of taxable and nontaxable items and they separately stated the total amount of each transaction and the tax charged on each transaction. Appellee contends the Z-tapes were not adequate.

{¶ 69} It is noteworthy that neither party entered into the record any of appellant's Z-tapes. Therefore, for purposes of appellee's motion for summary judgment, we are primarily left with the deposition testimony of two witnesses who only generally described the information contained on the Z-tapes. That testimony is inconclusive, and therefore, insufficient to establish that the Z-tapes were not adequate primary records as defined in Ohio Adm.Code 5703-9-02(B) or that appellee is entitled to judgment as a matter of law. The testimony also demonstrates there are at least three material issues of fact to be resolved.

{¶ 70} The first material factual issue is whether the auditor, April Hackett, categorically rejected appellant's Z-tapes without considering whether they distinguished between the sales of taxable and nontaxable items and whether they separately stated the total amount of each transaction and the tax charged on each transaction. Even if Hackett did consider whether the Z-tapes contained this information, there is a second material issue of fact regarding what information was lacking. Lastly, there is a material issue of fact regarding whether appellant provided appellee with Z-tapes for all 12 months of calendar

year 2015 or for only 8 months of that calendar year.  There is conflicting testimony and conflicting evidence on each of these factual issues.  The resolution of these factual issues is material in determining whether appellee frivolously disregarded a relevant section of the Ohio Revised Code or an Ohio administrative rule.  R.C. 5703.54(A)(1).

{¶ 71} With respect to the issue of whether appellee categorically rejected the Z-tapes appellant provided as adequate primary records, Hackett testified as follows:

> Q.  Okay.  Do you recall if Tina - - if you thought there were records that Tina didn't provide to you?
>
> A.  She did not provide sales records.  Well, she provided the Z tapes, but there's [sic] a form of sale records but they're not accurate enough to use in a sale tax audit.
>
> Q.  Okay.  So correct me if I'm - - so did you say Z tapes weren't accurate enough to use in the sales tax audit?
>
> A.  Correct.
>
> Q.  Okay.  Why not?
>
> A.  Okay.  So the Z tapes only breaks things down very generically.  So if I were to go in the carryout and purchase, say, like, a 20 ounce Coke, those Z tapes wouldn't say I purchased a 20 ounce Coke, it would probably say a pop.
>
> Q.  Uh-huh.
>
> A.  And unfortunately with Z tapes, you can't verify what was a pop and what wasn't a pop purchase, just like you can't verify anything else.  So if something that rang under a dairy category, you couldn't verify that maybe a pop got accidentally recorded as a dairy product.  And so in order to accurately determine if sales tax was appropriately charged on taxable items, you can't use those because you can't determine what was actually purchased.  That's - -
>
> Q.  Okay.
>
> A.  That was the UPC.  So if you scan an item in with a UPC and you can provide a UPC listing of all of the UPCs that you sell and how they're coded in your system as taxable or exempt.  If you can't provide something like that, there's - - as far as I

know, there's no other way to determine the - - you know, if sales tax has been correctly charged.

Q. So are you saying that a UPC and a UPC listing is the only way to accurately track sales tax?

A. No. I'm - - there may be other ways. But in this particular carryout, I don't know of another way. The Z tapes weren't sufficient.

(Hackett Dep. at 29-31.)

{¶ 72} Appellee's motion for summary judgment relies solely on this testimony to support its argument that the Z-tapes appellant provided were inadequate. Hackett's testimony suggests that she found Z-tapes, as an entire category of sales records, to be inadequate because there is the possibility that a particular item could be mistakenly rung up by the person operating the cash register, and therefore, the Z-tapes may not reflect the actual item purchased. However, Ohio law recognizes cash register tapes as adequate primary records if they contain the required information. Hackett's stated reason for rejecting appellant's Z-tapes is arguably inconsistent with the requirements set forth in Ohio Adm.Code 5703-9-02(A) and (B). There is nothing in the record indicating that appellant did not accurately ring up actual sales. Although Hackett stated that appellant's Z-tapes "weren't sufficient," it is unclear whether she meant they were categorically insufficient solely due to the potential for operator error or because the Z-tapes she reviewed were insufficient for some other reason. Hackett was never asked, and at no point in her deposition did she state that appellant's Z-tapes did not distinguish between the sales of taxable and nontaxable items or that they did not separately state the total amount of each transaction and the tax charged on each transaction. In fact, Hackett's testimony arguably suggested that appellant's Z-tapes did contain this information because she "was able to verify that per the Z tapes [appellant] had collected more sales tax than she had remitted." (Hackett Dep. at 31.) Because there is a material issue of fact regarding whether Hackett categorically rejected appellant's Z-tapes for a reason arguably inconsistent with Ohio law, appellee has not shown that it is entitled to judgment on appellant's claim as a matter of law.

{¶ 73} Even if Hackett did not categorically reject appellant's Z-tapes, there is also a material issue of fact as to whether the Z-tapes appellant provided were adequate primary records as defined by Ohio Adm.Code 5703-9-02(B)(1). As noted above, Hackett was not asked and never stated that the Z-tapes did not distinguish between taxable and nontaxable items or that they did not separately state the total amount of each transaction and the tax charged on each transaction.

{¶ 74} Responding to a question about why the Z-tapes were not accurate enough to use in the sales tax audit, Hackett stated:

> So the Z tapes only breaks things down very generally. So if I were to go in the carryout and purchase, say, like a 20 ounce Coke, those Z tapes wouldn't say I purchased a 20 ounce Coke, it would probably say a pop.

(Hackett Dep. at 29-30.)

{¶ 75} This testimony arguably suggests the Z-tapes Hackett reviewed did separately state the total of each transaction, the tax charged on each transaction, and distinguished between taxable and nontaxable items—at least by item category. Hackett's concern seems to be with appellant's use of item categories. Other than stating that an item theoretically could be rung up in the wrong category, Hackett does not explain why appellant's use of item categories prevented her from conducting a sales tax audit, particularly when appellant also provided Hackett with purchase invoices (primary records) and secondary records such as daily cash sheets, credit card receipts, various financial summaries, and bank records.

{¶ 76} In its appellate brief, appellee cites to *Natl. Delicatessens, Inc. v. Collins*, 46 Ohio St.2d 333 (1976) to support its argument that appellant's Z-tapes were not adequate primary records because they used item categories. But *Delicatessens* underscores the factual nature of the adequacy determination. In *Delicatessens*, the court found that the cash register tapes at issue "reveal only daily totals of each of three categories of sales" and were "not sufficiently detailed to allow the Tax Commissioner to determine if sales taxes which should have been charged * * * were actually collected and remitted * * *." (Citation omitted.) *Id.* at 334. The court did not hold that the use of item categories rendered cash register tapes inadequate as a matter of law. *Delicatessens* suggests that cash register tapes

that reflect more than just daily totals and more than just three-item categories might be sufficient to determine if the proper amount of sales tax had been collected and remitted.

{¶ 77} Here, it is unclear whether the Z-tapes appellant provided reflected more than just daily totals. Nor is it clear how many item categories appellant used. (Five are identified as examples.) Lastly, it is unclear what other information the Z-tapes contained. These are all material factual issues.

{¶ 78} The majority decision quotes the following portion of Thorbahn's deposition testimony as establishing that appellant's Z-tapes did not separately state the total amount of each transaction and the tax charged on the transaction.

Q. Z tapes. Explain to me what a Z tape is.

A. Z tape is done daily out of our cash register. It reports everything that goes into the cash register. When it prints out, it will give you - - we have it set up so that it's either dairy, pop, beer, cigarettes, deli because we have broasted chicken. It will tell us the amount of those categories that we sold every day. It would go down and give you a total of the sales, the amount taxable, the amount nontaxable and the amount of tax charged for that day.

Q. Okay. And, physically, what does a Z tape look like?

Q. Sort of like a - - maybe credit card receipt that you would get.

Q. Just longer?

A. Right. It's on a piece of thermal paper.

Q. I'm sorry.

A. It's on a piece thermal paper, thermal credit card paper or register paper.

Q. For Z tapes for 2015, should there be one for every day that Tina's did business?

A. Yes.

Q. So every day except Christmas day?

A. Correct.

(Thorbahn Dep. at 21-23.)

{¶ 79} Thorbahn was not asked if this is the only information contained on the Z-tapes. Nor was Thorbahn asked if the Z-tapes separately stated the total amount of each transaction and the tax charged on each transaction. Thorbahn's testimony does not establish that appellant's Z-tapes failed to include the specific information required by Ohio Adm.Code 5703-9-02(B)(1). Appellee did not identify any evidence in its motion for summary judgment indicating that the Z-tapes did not separately state each transaction and the tax charged. Nor did Hackett state that in her deposition. Again, Hackett's deposition testimony suggests that her issue with the Z-tapes was not that they failed to distinguish between taxable and nontaxable sales or that they did not reflect individual transactions and the tax charged on each transaction. Rather, her problem appears to be with appellant's use of item categories in recording individual transactions. Because there are no Z-tapes in the record to review and because it is not clear from the evidence that the Z-tapes failed to separately state the total amount of each transaction and the tax charged on each transaction, there is a material issue of fact regarding whether the Z-tapes appellant provided contained the information required by Ohio Adm.Code 5703-9-02(B)(1). In addition, viewing the evidence in appellant's favor as the nonmoving party, and considering appellee's failure to include any Z-tapes in the record, appellee has not shown it is entitled to judgment as a matter of law.

{¶ 80} Lastly, there is a material issue of fact concerning whether appellant provided appellee with Z-tapes for all 12 months of calendar year 2015 or only for 8 months of that calendar year. Hackett indicated in her deposition that appellant only provided Z-tapes for January through August 2015. (Hackett Dep. at 40-41.) However, Hackett did not expressly state in her audit remarks that she did not have Z-tapes for all 12 months of 2015. She only stated what months she reviewed. In addition, her audit report does not reflect that she informed appellant that Z-tapes for any months were missing, even though Hackett did point out a few issues regarding the legibility of some secondary records and some confusion about what day a certain group of documents related to.

{¶ 81} Significantly, Thorbahn testified that she provided appellant with Z-tapes for all of 2015, except for Christmas day. (Thorbahn Dep. at 17-18, 20, 22, 26, and 48.) In

questioning Thorbahn, appellee's counsel attempted to show the absence of some Z-tapes by referencing deposition Exhibit I which was a copy of one of appellant's daily cash records it received in discovery. Thorbahn admitted that a Z-tape should be attached to the daily cash record sheet. Appellee's counsel represented to Thorbahn that there was not a Z-tape attached to Exhibit I, thereby suggesting that appellant had not provided one. But a question about what was or was not produced in discovery does not establish that appellant did not previously provide Hackett with Z-tapes for every day of 2015 except Christmas—a day appellant was not open for business. In addition, Exhibit I was from a day in January 2015 and Hackett testified that she had Z-tapes from January through August 2015. Moreover, Thorbahn disputed Hackett's contention that appellant did not provide Z-tapes for all days of 2015 except Christmas. This conflicting testimony creates a material issue of fact regarding the Z-tapes appellant provided Hackett for 2015.

{¶ 82} Ultimately, as the plaintiff, appellant has the burden to show that the Z-tapes it provided to appellee were adequate primary records for a sales tax audit and that appellee frivolously disregarded Ohio law in finding otherwise. But on summary judgment, appellee has the burden to demonstrate that there are no material issues of fact and that it is entitled to judgment as a matter of law. Appellee is entitled to summary judgment on appellant's claim only if it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to appellant when construing the evidence most strongly in appellant's favor. Civ.R. 56(C). For the reasons outlined above, appellee did not meet its burden. Therefore, I would sustain appellant's first assignment of error and reverse the judgment of the Court of Claims of Ohio. Because the majority reaches a different conclusion, I respectfully dissent.[14]

---

[14] Because there are material issues of fact, I agree with the majority that the appellant is not entitled to summary judgment and I would also overrule appellant's second assignment of error.