[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 287.]

BASIC DISTRIBUTION CORPORATION, APPELLEE, *v*. OHIO DEPARTMENT OF

TAXATION, APPELLANT.

[Cite as *Basic Distrib. Corp. v. Ohio Dept. of Taxation*, 2002-Ohio-794.]

*Taxation—Tax audit—Taxpayer rights—Exhaustion of administrative remedies*
*in R.C. Chapter 5717 is not required to bring an action pursuant to R.C.*
*5703.54—Court of appeals' interpretation of what types of actions can be*
*redressed under R.C. 5703.54, as well as its finding that Ohio Department*
*of Taxation violated R.C. 5703.54, reversed.*

(No. 00-1911—Submitted October 16, 2001—Decided February 27, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-1309.

_____

**LUNDBERG STRATTON**, **J**.

{¶ 1} Appellee Basic Distribution Corporation  sells and distributes
electrical supplies to construction contractors, manufacturers, and maintenance
firms, for resale or for incorporation into real property.  In April 1994, Ohio
Department of Taxation agent Jenny Gleich telephoned Basic's vice president of
finance, Aurel Balcarcel, to inform him that appellant, the Ohio Department of
Taxation, was going to conduct a tax audit of Basic's sales and purchases for the
period from October 1, 1990 to March 31, 1994.[1]  Due to the large number of
potentially exempt sales, Gleich told Balcarcel that she believed that a sample
method should be used in auditing Basic's sales.[2]  However, Balcarcel objected to

---

1.  A sales and use tax audit provides a review of a taxpayer's records to determine whether the
taxpayer is collecting the proper amount of taxes from its customers and is paying the proper amount
of taxes on purchases that it makes.
2.  Use of a sample methodology means that, rather than reviewing all transactions for the audit
period, a sample period of time is chosen from which transactions are examined and used to
represent the entire audit period.

the months that Gleich chose for the sample because Basic's recent conversion to a new computer system would make it more difficult for Basic to retrieve records for those months. Gleich agreed to change the sample months. In contrast to the sample audit of Basic's sales, the audit of Basic's purchases was comprehensive.

{¶ 2} In a letter dated April 18, 1994, the department confirmed that Basic would be the subject of an audit and confirmed a May 9, 1994 appointment for Gleich to meet with Balcarcel to begin the audit. Enclosed with the April letter was a brochure entitled "Taxpayers' Bill of Rights." The Taxpayers' Bill of Rights briefly explains the audit process and warns that a tax assessment must be appealed within thirty days of delivery of the assessment.

{¶ 3} At the May 9, 1994 meeting, Basic, through Balcarcel, agreed that the department would use September 1992 and March 1993 as representative sample months for the audit period. After the meeting, Gleich began reviewing the certificates of exemption that Basic had on file.[3] Gleich testified that pursuant to department policy, she examined each certificate to determine whether it was the correct type of certificate and whether it contained (1) the name of the vendor, (2) a signature date, (3) the statutory reason for the exemption, and (4) a signature. Depending upon whether the certificate contained the proper information, Gleich would then stamp the certificate either "allowed" or "disallowed." If the certificate was allowed, then the sale was exempt from tax. Conversely, if the certificate was stamped disallowed, then the sale, without subsequent proof to the contrary, would be subject to tax.

---

3. Initially Gleich began to review the certificates of exemption within the sample months. But because this was the first time that Basic had been audited, Balcarcel requested that Gleich educate Basic's staff regarding the information required to complete a valid certificate of exemption. Accordingly, Gleich reviewed all fifteen hundred certificates of exemption that Basic had on file for the purpose of educating Basic's employees. Only the certificates examined during the sample months were held in the audit; the others were merely reviewed for the purpose of educating Basic's staff.

{¶ 4} Gleich took approximately ten days to review the certificates. She then compared them to Basic's sales records for the sample months and prepared a "challenge list" of sales for which the tax-exempt status was in question. Gleich presented the challenge list and the department's "Notice of Intention to Levy a Sales and Use Tax Assessment" to Balcarcel on June 21, 1994. The letter accompanying the notice explained that Basic had sixty days to establish that the sales were exempt from taxation.

{¶ 5} Gleich told Basic that it would need a "letter of usage" from the customer for each sale on the challenge list. Gleich explained what information needed to be included in the letter of usage. Gleich provided Balcarcel sample letters requesting letters of usage to assist Basic but informed Basic that it would have to tailor its letter to its own business. Using the samples, Basic drafted a letter to its customers seeking letters of usage for the sales listed on the challenge list. The first of these letters went out on June 24, 1994. Shortly thereafter, Basic began receiving letters of usage in return, which Gleich examined. Gleich advised Balcarcel that the letters of usage were not providing the proper information. Pursuant to advice from Gleich, Basic composed a new letter, which was sent out on June 30, 1994.

{¶ 6} In a letter dated September 15, 1994, the department notified Basic that it could submit any additional records that would be pertinent to the audit. Basic indicated that it had no additional records to submit.

{¶ 7} Subsequently, Gleich notified Balcarcel by telephone that an assessment would be levied against Basic and set up a meeting for a final review. Gleich testified that at the final review, she (1) explained her calculations, (2) informed Basic that it could appeal any disputes regarding the tax-exempt status of any sales, and (3) notified Balcarcel that Basic would receive a letter that would be a "precursor" to the formal notice of assessment. Gleich testified that she told Balcarcel that subsequently Basic would receive a formal notice of the assessment

by certified mail and that Basic would have thirty days after the receipt of the assessment to pay or appeal.

{¶ 8} Basic received a letter dated November 14, 1994, entitled "Summary for Recommending Assessment." The letter read:

"Please note, this *does not* constitute a formal notice of assessment. *No appeal can be made* as a result of receipt of this information.

"The Assessment Division will send you a formal notice of assessment. The formal notice of assessment will be delivered by certified mail. * * * *No appeal can be made until you receive the formal notice of assessment*." (Emphasis added.)

{¶ 9} On November 17, 1994, Basic received a computer-generated form entitled "Sales/Use Tax Assessment." This notice of assessment informed Basic that it owed $189,730.34 in taxes and that it could file a petition for reassessment.

{¶ 10} Basic never filed a petition for reassessment, and paid the assessment. However, in a letter dated September 13, 1995, Basic requested a refund. Gleich processed the refund claim. The Department issued a refund to Basic in the amount of $23,181.42.

{¶ 11} Basic sought a hearing to contest the amount of the refund. Basic hired the firm of Deloitte & Touche, L.L.P., to represent Basic at the hearing, which was held on February 12, 1997. On July 28, 1997, the department issued its final determination, granting Basic an additional refund of $4,055.27, reducing the final assessment against Basic to $162,493.65.

{¶ 12} On April 13, 1998, Basic filed a complaint against the department in the Court of Claims pursuant to R.C. 5703.54, seeking monetary damages, a declaratory judgment, and injunctive relief. The Court of Claims granted judgment to the department on two grounds: (1) Basic had failed to exhaust its administrative remedies, and (2) Basic had failed to prove by a preponderance of the evidence that the department was liable under R.C. 5703.54.

{¶ 13} Basic appealed. The appellate court reversed. The appellate court held that a taxpayer does not have to exhaust administrative remedies before filing an action pursuant to R.C. 5703.54. The appellate court also held that Basic had proven that it met the three criteria of R.C. 5703.54(A).

{¶ 14} This matter is before the court pursuant to a discretionary appeal.

{¶ 15} The only issue raised by the department in its appeal to this court is whether its actions give rise to a cause of action for which relief can be granted pursuant to R.C. 5703.54. However, implicit in the issue of determining liability under R.C. 5703.54 is the effect of the exhaustion-of-remedies doctrine. Therefore, we will also address the issue of exhaustion of remedies to properly address the scope of R.C. 5703.54. See *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 279, 617 N.E.2d 1075, 1079.

Exhaustion of Administrative Remedies

{¶ 16} We agree with the court of appeals that an action pursuant to R.C. 5703.54 does not require exhaustion of the administrative remedies set forth in R.C. Chapter 5717.

{¶ 17} Exhaustion of administrative remedies requires a person to exhaust the statutory administrative remedies before seeking redress from the judicial system. *Noernberg v. Brook Park* (1980), 63 Ohio St.2d 26, 17 O.O.3d 16, 406 N.E.2d 1095. The purpose of the doctrine of exhaustion of administrative remedies is to prevent premature interference with the administrative processes. *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 111, 564 N.E.2d 477, 480. However, where there is a judicial remedy that is intended to be separate from the administrative remedy, the requirement of exhaustion of administrative remedies does not apply. See, *e.g., Larkins v. G.D. Searle & Co.* (1991), 68 Ohio App.3d 746, 589 N.E.2d 488.

{¶ 18} Clearly, the typical avenue to challenge a final assessment is the administrative appeal process set forth in the Revised Code. See R.C. 5717.02 and

5717.03. However, in 1989, the General Assembly enacted R.C. 5703.54, which provides that a taxpayer may file an action for damages where a Department of Taxation employee frivolously disregards a provision of R.C. Chapter 5711, 5733, 5739, 5741, or 5747, or a rule of the Tax Commissioner adopted under the authority of one of those chapters. R.C. 5703.54(A)(1). This statute allows redress for actions by a Department of Taxation employee that serve merely to harass or are clearly unsupportable by current law.

{¶ 19} In comparing the harm that R.C. 5703.54 seeks to address with the purpose of the administrative remedies of R.C. Chapter 5717, it is evident that each provides a separate action for a taxpayer. This conclusion is bolstered by the absence of language in R.C. 5703.54 requiring a complainant to exhaust administrative remedies before filing an action pursuant to R.C. 5703.54. When the General Assembly enacted R.C. 5703.54, it was aware of the administrative remedies set out in R.C. Chapter 5717, which had been in existence in one form or another for over fifty years. See, *e.g.*, G.C. 5610 *et seq.*, as amended by 1939 Am.Sub.S.B. No. 159, 118 Ohio Laws, 344, 353. Thus, we agree that there is no requirement that a taxpayer exhaust administrative remedies set out in R.C. Chapter 5717 before filing an action pursuant to R.C. 5703.54.

{¶ 20} However, that is not to say that a taxpayer will always have a cause of action under R.C. 5703.54 against the department. While R.C. 5703.54 provides a cause of action that is separate from administrative remedies, we must examine what types of actions give rise to a claim for which relief can be granted. Many claims must still be addressed on appeal. Therefore, we must look to what sort of action R.C. 5703.54 contemplates. This is a case of first impression that requires us to interpret R.C. 5703.54.

R.C. 5703.54

{¶ 21} In construing a statute, courts have an obligation to give effect to the intention of the General Assembly. *Christe v. GMS Mgt. Co.* (2000), 88 Ohio St.3d 376, 726 N.E.2d 497. In determining legislative intent, courts must first look to the language of the statute. *In re Civ. Serv. Charges & Specs. Against Piper* (2000), 88 Ohio St.3d 308, 725 N.E.2d 659. If the language conveys a meaning that is clear and unequivocal, interpretation is at an end, and the statute must be applied accordingly. *In re Guardianship of Lombardo* (1999), 86 Ohio St.3d 600, 605, 716 N.E.2d 189, 193-194.

{¶ 22} R.C. 5703.54 states:

"(A) A taxpayer aggrieved by an action or omission of an officer or employee of the department of taxation may bring an action for damages * * * if *all* the following apply:

"(1) In the action or omission the officer or employee *frivolously disregards* a *provision of Chapter 5711., 5733., 5739., 5741., or 5747. of the Revised Code or a rule* of the tax commissioner adopted under the authority of one of those chapters;

"(2) The action or omission occurred with respect to an audit or assessment and the review and collection proceedings connected with the audit or assessment;

"(3) The officer or employee did not act manifestly outside the scope of his office or employment and did not act with malicious purpose, in bad faith, or in a wanton or reckless manner.

"* * *

"(F) As used in this section, 'frivolous' means that the conduct of the commissioner * * * satisfies either of the following:

"(1) It obviously serves merely * * * to *harass* or *maliciously injure* the taxpayer * * *;

"(2) It is *not warranted under existing law* and *cannot be supported by a good faith argument for an extension, modification, or reversal of existing law."* (Emphasis added.)

**{¶ 23}** Thus, R.C. 5703.54 requires that a claim must be based upon frivolous disregard of certain provisions of the Revised Code or rules of the Tax Commissioner. A word not defined in a statute will be given its common and ordinary meaning. *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 736 N.E.2d 886. The word "disregard" is defined as "to give no thought to: pay no attention to." Webster's Third New International Dictionary (1986) 655. The term "frivolous" is defined by R.C. 5703.54 as conduct that serves merely to harass or maliciously injure the taxpayer or conduct that is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. Thus, in order for a taxpayer's claim to be actionable under R.C. 5703.54, the department must "pay no attention to" a statute or rule, and its disregard must be unsupportable in good faith under existing law or must maliciously injure or serve merely to harass the taxpayer.

**{¶ 24}** Notably, this definition excludes a merely erroneous interpretation of a statute or rule by the department. Accordingly, if the complaint is in reality against the department's interpretation of a statute, then it is not actionable under R.C. 5703.54. To define the phrase "frivolously disregards" in a more liberal manner would muddle the difference between an erroneous interpretation or application of a statute, which is properly reviewed in an administrative appeal, and the frivolous disregard of a statute or rule, which is properly addressed under R.C. 5703.54. Further, a more liberal interpretation would conflict with the spirit of R.C. 5703.54, which is meant to provide a remedy separate from the administrative appeal process, but only where the action taken by the department frivolously disregards a statute or rule.

The Appellate Decision

8

{¶ 25} The appellate court held that "the department 'frivolously disregarded' *standard procedures* by mandating use of a sample, failing to offer a full audit, unreasonably disallowing exemption certificates without identifying those disallowed or the reason for their disallowance, projecting a sample result over the entire audit period contrary to R.C. 5739.13(A), failing to assist Basic in drafting an acceptable letter to request additional information from customers and refusing to review responses during the statutory period, providing misinformation with respect to a taxpayer's right to appeal, failing to advise Basic that it had a right to an additional ninety to one hundred twenty day extension beyond the initial sixty-day period, having the same agent review her own work when Basic applied for a refund, and providing a reduction in the assessment without providing any basis for the reduction."

{¶ 26} The plain language of R.C. 5703.54 requires that an officer or employee of the department frivolously disregard a *statute or a rule*. Thus, the court of appeals misstated the law when it indicated that " 'frivolously disregarded' standard procedures" could be the basis for an action under R.C. 5703.54. We address each of the appellate court's remaining findings and conclusions separately below.

*Using a Sample Method/Failing to Offer Full Audit*

{¶ 27} R.C. 5739.13(A) expressly permits the department to conduct an audit using a sample period. We cannot find any statute or rule that requires that the department offer to conduct a full audit. Moreover, Basic agreed in writing to the sample method. Accordingly, the court of appeals erred in holding that these actions gave rise to a cause of action under R.C. 5703.54.

*Disallowing Certificates Without Giving Reasons*

{¶ 28} There is no statute or rule that expressly requires the department to inform the taxpayer which certificates are disallowed or why. Furthermore, this information was provided in the challenge list given to Basic. The challenge list

listed sales that the department determined were not tax exempt because there was no valid certificate of exemption for the period in which the sale occurred. The challenge list included Basic's customers, invoice dates, the sale amount, and the type of product sold. Agent Gleich explained to Balcarcel the need to obtain letters of usage from customers regarding the sales on the challenge list in order to prove the sales' exempt status.[4] Thus, the department provided Basic with all the information that it needed to attempt to attain tax-exempt status for the challenged sales.

{¶ 29} Accordingly, the court of appeals erred in holding that these actions gave rise to a cause of action under R.C. 5703.54.

*Projecting Sample over an Entire Audit Period Contrary to R.C. 5739.13(A)*

{¶ 30} R.C. 5739.13(A) expressly authorizes the sample method for an audit. Thus, the department was expressly authorized to project a sample over the audit period in Basic's audit. Accordingly, the court of appeals erred in holding that these actions gave rise to a cause of action under R.C. 5703.54.

*Failing to Assist Basic in Drafting an Acceptable Letter to Request Additional Information from Customers and Refusing to Review Responses During the Statutory Period*

{¶ 31} Again the appellate court failed to cite any statute or rule that requires the department to assist the taxpayer in drafting letters to its customers, requesting letters of usage, and reviewing the letters of usage it receives in return. Further, despite the lack of any such legal obligation, Gleich did provide sample letters to Basic to assist Basic in acquiring letters of usage from its customers. She also reviewed the letters of usage that Basic received from its customers and made suggestions to Basic on how to modify its letter so that Basic would receive the

4. A certificate of exemption is the typical method for determining the tax-exempt status of a sale of goods. If a certificate of exemption does not exist or does not contain the required information, the taxpayer must request a letter of usage from its customer. The letter of usage gives information to prove that the sale was tax exempt.

proper information in return. The department went beyond what it was required to do, and consequently we fail to understand how the appellate court found frivolous conduct in this respect. Further, in addition to the sixty-day period, Basic had another opportunity to submit documentation after it petitioned for reassessment, but failed to use it. See R.C. 5739.03(E).

{¶ 32} Accordingly, the court of appeals erred in holding that these actions gave rise to a cause of action under R.C. 5703.54.

*Providing Misinformation Regarding Taxpayer's Right to Appeal*

{¶ 33} The finding by the court of appeals that the department misinformed Basic appears to be based upon the court's determination that the document that informed Basic of its right to challenge the assessment was inadequate to achieve that purpose.[5]

{¶ 34} The law requires the department to notify a taxpayer of the right to challenge an assessment, as well as the method for administrative review. R.C. 5703.51(C)(2). The form notifying Basic of the assessment levied against it stated: "Note Important Information on Reverse Side of This Assessment." On the reverse side the following wording appeared:

"IMPORTANT INFORMATION-ACT PROMPTLY

"If this assessment is not paid or contested by filing a petition for Reassessment in the manner prescribed by law within 30 days after receipt it will be certified to the Attorney General for collection * * *

"* * *

"WHAT TO DO IF YOU THINK THIS ASSESSMENT IS IN ERROR

"Failure to follow these instructions may result in dismissal of your petition.

---

5. The court of appeals even objected to the "flimsy, half page paper" and the size of the type. We have examined the notice and find that these objections are without merit and that the notices certainly do not violate any statute or rule.

"You wish to protest amounts assessed as tax * * *: If you disagree with this assessment you may file a Petition for Reassessment. The petition must be in writing, specify the items objected to and the reasons for those objections, and must be filed within thirty days of the receipt of the assessment."

{¶ 35} The third page of this assessment form is entitled "Petition for Reassessment." It is a form that requires the taxpayer to explain the reasons for its objection to the assessment, provides an opportunity for the taxpayer to seek a hearing, and provides the address where the petition for reassessment must be sent. This language was more than adequate for the task of informing Basic of its right to challenge the assessment.

{¶ 36} Moreover, the mere fact that this document notified Basic that it was being assessed more than $180,000 ought to have demanded scrutiny of the entire document by Basic. Yet Balcarcel admitted that he had failed to read beyond the first page of this document. Had he done so, he would have read the instructions regarding the filing of a petition for reassessment.

{¶ 37} Accordingly, the court of appeals erred in holding that the notice of assessment gave rise to a cause of action under R.C. 5703.54.

*Failing to Advise Basic that It Had Additional Time to Prove Exemptions*

{¶ 38} The appellate court is correct that Ohio law allows a taxpayer who files a petition for reassessment additional time to document exemptions beyond the sixty-day period. See R.C. 5739.03(E) and Ohio Adm.Code 5703-9-45(A). However, there is no affirmative duty on the department to inform the taxpayer of this additional time. Accordingly, the court of appeals erred in holding that this action gave rise to a cause of action under R.C. 5703.54.

*Having the Same Agent Review Her Own Work When Basic Applied for a Refund
and Reducing the Assessment Without Stating any Reasons*

**{¶ 39}** Again the appellate court failed to cite any statutory authority that would prevent an agent who conducts an audit from reviewing a refund claim on that audit or that a refund must be accompanied by the department's reasoning. Further, Basic never alleged that any prejudice resulted from Gleich's review of Basic's refund claim. In fact, Gleich testified that she said that if Basic sent the audit claim to her attention, she would expedite it. Accordingly, the court of appeals erred in holding that these actions gave rise to a cause of action under R.C. 5703.54.

Basic's Allegations

**{¶ 40}** In its brief, Basic makes additional arguments that the department frivolously disregarded certain statutes and or rules. We will address each of these arguments below.

*Adequacy of Exemption Certificate Information*

**{¶ 41}** Basic argues that a "certificate need not meet overly-technical requirements, but is sufficient so long as the stated basis 'reasonably apprise[s] the tax commissioner' of the exemption claimed." Basic cites numerous instances in which it claims that the department was overly technical in rejecting certificates. While these allegations may or may not be valid, they do not set forth a claim for which relief can be granted under R.C. 5703.54.

**{¶ 42}** Determining whether the department erred in rejecting certificates due to technicalities is a matter of interpretation of statutes or rules, which is properly addressed in an appeal, not in an action for frivolous disregard of a statute or rule under R.C. 5703.54.

*Direct Pay Permits*

**{¶ 43}** Basic claims that the department frivolously ignored R.C. 5739.031(F) when it disallowed certificates because Gleich determined that the

direct payment numbers were invalid. R.C. 5739.031(F) provides that if a buyer notifies a seller of the buyer's direct payment permit number and that the tax is being paid directly to the state, the seller is absolved of all duties and liabilities imposed by R.C. 5739.03 or 5741.04.

{¶ 44} There is nothing in R.C. 5739.031, or in any statute or rule cited that addresses what occurs if a taxpayer receives an improper direct payment permit number. Again, this is an issue of interpretation as to whether a taxpayer is relieved of liability under R.C. 5739.031(F) if the permit number it receives is incorrect. Thus, it is an issue for an appeal.

*Proof of Exemption*

{¶ 45} Basic asserts that Gleich indicated that only a letter of usage could be used to prove tax-exempt status. Citing *Union Metal Mfg. Co. v. Kosydar* (1974), 38 Ohio St.2d 53, 56, 67 O.O.2d 72, 73, 310 N.E.2d 249, 251, fn. 3, Basic claims that taxpayers may submit other evidence to prove exemption by other means, such as affidavits, depositions, etc.

{¶ 46} The suggestion that the department might accept other evidence to prove exemption is found in a footnote in *Union Metal.* However, the court did not affirmatively hold that other evidence could be submitted as a matter of law. Thus, *Union Metal* does not require that other evidence must be considered in determining exempt status.

{¶ 47} Further, in a letter dated September 15, 1994, the department notified Basic that it could submit any additional records that would be pertinent to the audit. Basic indicated that it had no additional records to submit. Thus, there is no basis for an action under R.C. 5703.54.

*Method of Calculating the Sample*

{¶ 48} Basic alleges that nothing allows the department to unilaterally dictate the manner of calculating a sample. Basic is referring to its attempt to supplement documentation of exempt cash sales. However, Gleich did examine the

submitted documentation but determined that it could not substitute for letters of usage. Further, Basic fails to indicate what statute or rule the department ignored when it determined that it would not accept Basic's proposal. Thus, this issue could have been raised only in an appeal.

*Construction Contracts*

{¶ 49} Basic alleges that the department frivolously disregarded the construction contract provisions set out in R.C. 5739.01(B)(5) and Ohio Adm.Code 5703-9-14. In essence these provisions state that when tangible personal property is purchased pursuant to a construction contract and is or is to be incorporated into a structure or on and becomes part of real property, the purchasing contractor is responsible for the tax on that sale.

{¶ 50} Failure to furnish a certificate of exemption results in a presumption that the tax applies. R.C. 5739.03(B). The taxpayer can overcome this presumption with a satisfactory letter of usage. *Id.*

{¶ 51} There was no frivolous disregard of R.C. 5739.01(B)(5) and Ohio Adm.Code 5703-9-14, but rather a determination by the department that Basic failed to submit sufficient evidence that sales were exempt. Review of the sufficiency of the evidence is an issue addressed in an appeal.

*Bad-Debt Provisions*

{¶ 52} Basic alleges that Gleich frivolously disregarded the bad-debt write-off provisions of R.C. 5739.121, which in effect permit a seller to recover taxes paid on sales to customers who fail to pay their bills.

{¶ 53} Gleich testified that she did not apply the bad-debt provisions in Basic's audit because, of the bad-debt sales that she audited, no taxes had been paid. The bad-debt provision allows a deduction only for bad debts for sales on which taxes were paid in the proceeding tax period. R.C. 5739.121. Thus, whether Gleich properly applied this rule was an issue for appeal.

Conclusion

**{¶ 54}** In essence, Basic fails to prove that the Department of Taxation engaged in any frivolous conduct for which R.C. 5703.54 provides a remedy. The trial court correctly analyzed these issues and applied R.C. 5703.54 to the facts of this case. The court of appeals erred in its application of R.C. 5703.54 and in substituting its own interpretation of the facts, which was not only contrary to the findings of the trial court, but also clearly contrary to the evidence in the record. In addition, the author of the court of appeals decision made several opinionated legal conclusions that have no basis in the law. While we agree that R.C. 5703.54 does not require exhaustion of administrative remedies, this case clearly presents issues that should have been addressed in an appeal and did not rise to the level of frivolous disregard of any statute or rule. In fact, it appears that the Department of Taxation went beyond its statutorily imposed duties in assisting Basic. Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS and COOK, JJ., concur in judgment.

———————————

*Bricker & Eckler*, *L.L.P.*, *Mark A. Engel* and *Luther L. Liggett, Jr*., for appellee.

*Betty D. Montgomery*, Attorney General, *Michael J. Valentine, Richard C. Farrin* and *James P. Dinsmore,* Assistant Attorneys General, for appellant.

*Blaugrund, Herbert & Martin, Inc*., *Steven A. Martin* and *Teri G. Rasmussen*, urging affirmance for *amicus curiae,* Ohio Society of Certified Public Accountants.

———————————