[Cite as *State ex rel. Pitstick v. Hastings*, 2025-Ohio-5093.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO ex rel. WASHINGTON COURT HOUSE CITY ATTORNEY, MARK J. PITSTICK, | : | CASE NO. CA2024-08-021 |
| | : | |
| Appellee, | : | OPINION AND JUDGMENT ENTRY 11/10/2025 |
| | : | |
| - vs - | : | |
| | : | |
| SHAWN HASTINGS, et al., | : | |
| Appellants. | : | |

CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CVD20240079

Frost Brown Todd LLC, and Frank J. Reed, Jr. and Thaddeus M. Boggs; and Anthony R. Severyn, Attorney for City of Washington C.H., Ohio, for appellees.

Wespbarwell, L.L.C., and Joshua S. Nagy and Jessica A. Barwell, for appellants.

---

# **O P I N I O N**

**BYRNE, J.**

{¶ 1} Appellants, Shawn and Delta Hastings ("the Hastings"), appeal from a

judgment of the Fayette County Court of Common Pleas, General Division, which granted a permanent injunction against them that prohibited them from operating a construction business from their residential property. The trial court found that the Hastings[1] violated the City of Washington Court House's zoning ordinances by operating a commercial concrete business from their residence and maintaining construction equipment on their residential property. For the reasons that follow, we affirm.

### I. Factual and Procedural Background

{¶ 2}   The Hastings own and reside at 1045 Damon Drive in Washington Court House, Ohio, property situated in an R-1A zoning district designated for low-density single-family residential use. They acquired the two undeveloped parcels on which their home now sits on June 30, 2021. The City issued a building permit on July 26, 2022, with an expiration date of January 24, 2025. The Hastings then began construction.

{¶ 3}   After construction, the City granted a temporary certificate of occupancy on September 19, 2023. The temporary certificate conditioned a permanent certificate on completion of additional concrete work. The Hastings moved into the home shortly before Christmas 2023. They completed the required concrete work in March 2024, and on April 8, 2024, the City issued them a permanent occupancy permit.

{¶ 4}   Throughout this period, both during construction and after obtaining the permanent occupancy permit, the Hastings kept various construction equipment on their property. This was no coincidence; they own a concrete construction business. Their residential property frequently housed a dump truck, a large work truck, a trailer, and a Bobcat, among other items. This equipment appeared variously in their driveway, on the lawn, and on the street along their property.

---

1. We are aware that the plural of "Hastings" is technically "Hastingses," but we will use "Hastings" for both the singular and plural because "Hastingses" comes across as unnatural and pedantic.

{¶ 5} Neighbors took notice and complained to the City. On October 31, 2023, while construction remained ongoing and before issuance of the permanent occupancy permit, the City's Building and Zoning Inspector issued a notice of violation to the Hastings, asserting they were conducting prohibited business activity by maintaining equipment used in their concrete business at their residence. The Inspector concluded that the presence of construction equipment constituted a prohibited business use of residential property and violated Section 3.01 of the Zoning Ordinance of the City of Washington Court House, Ohio.

{¶ 6} When the equipment remained, the City, through City Attorney Mark J. Pitstick, initiated legal action against the Hastings on February 23, 2024. The City sought a declaratory judgment that the Hastings were violating the zoning code, a declaration of a nuisance, and preliminary and permanent injunctions. Different sections of the complaint alternatively referred to the injunctions as being sought under Civ.R. 65(B) and R.C. Ch. 3767. The Hastings promptly answered, asserting four counterclaims: a claim for declaratory judgment that no nuisance existed; a claim for declaratory judgment that they were not using their home as a business; a claim that the City's actions constituted an uncompensated taking; and a claim that the City's notice was deficient, violating their due-process rights.

{¶ 7} On May 1, 2024, the City moved for a temporary restraining order and preliminary injunction under both R.C. 3767.04(B) and Civ.R. 65(A). Following a hearing, the court in a June 28 entry denied the City's requests. The court found that the Hastings possessed an active building permit valid until January 24, 2025, and that the City had failed to demonstrate by clear and convincing evidence that the Hastings were operating a business on their property. In that same entry, the court scheduled a July 19, 2024 hearing "on the issue as to whether the property is a public nuisance and on the issue of

- 3 -

whether a permanent injunction should issue."

{¶ 8} Two days before this hearing, on July 17, the Hastings filed two motions: a motion for summary judgment, arguing that the court's previous finding that no business operation existed was dispositive of all claims, and a combined motion to continue the hearing, to strike the City's subpoenas, and to set a status conference establishing the purpose and scope of the scheduled July 19 hearing.

{¶ 9} The court initially (on July 18) overruled the summary-judgment motion as untimely for failing to meet the 14-day prehearing requirement. The Hastings then sought leave to file their motion instanter, which the court granted. The court also partially granted the Hastings' combined motion, continuing the hearing to August 8, 2024. Three days before this rescheduled hearing, the Hastings filed another combined motion seeking clarification of the hearing's nature, requesting another continuance, and asking the court to establish a case schedule under Fayette C.P., Gen.Div., Loc.R. 6.03(B). The motion to continue argued that the Hastings were not clear on whether their counterclaims would be heard at the August 8, 2024 hearing and that they had not conducted formal discovery.

{¶ 10} On August 7, the court denied both the Hastings' summary-judgment motion and their August 5 combined motion, finding they had sufficient time for discovery. The court clarified that the August 8 hearing would address both the permanent injunction and the Hastings' counterclaims.

{¶ 11} At the August 8 final hearing, multiple witnesses testified for the City, including the Building and Zoning Inspector and several neighbors who had observed construction equipment and vehicles on the Hastings' property and the street. After the second neighbor testified that the Hastings had parked their equipment and vehicles in their driveway and in front of their home for "quite a few months," the Hastings' counsel agreed to stipulate "that construction equipment during the period in question was parked

on or about the property or the street in front." Five days later, on August 13, 2024, the court issued an entry granting the City a permanent injunction and ordering the Hastings to "cease and desist from operating a construction business" from their residence. The court also enjoined them "from operating a non-conforming home occupation," defined in Section 33.02 of the Zoning Ordinance as "any occupation or profession conducted primarily by immediate resident family members, which is clearly incidental and secondary to the dwelling's residential use" and "meet[s] the standards and requirements specified in Section 25.08 of this Ordinance." The court further declared the residence "to be a public nuisance because of the operation of a home occupation from said residence that is not permitted under the applicable zoning ordinance," and dismissed all the Hastings' counterclaims.

{¶ 12} The Hastings appealed.

## II. Analysis

{¶ 13} The Hastings assign three errors to the trial court: (1) the trial court violated the their due process rights by not setting a case schedule and unreasonably accelerating the final hearing without allowing for any prosecution of counterclaims; (2) the trial court erred in denying the Hastings' motion for summary judgment; and (3) the trial court erred in finding clear and convincing evidence that they operated an unpermitted home occupation. We will examine those assignments of error in turn.

### A. Procedural Due Process

{¶ 14} The Hastings' first assignment of error states:

> THE TRIAL COURT VIOLATED THE APPELLANTS' DUE PROCESS RIGHTS BY NOT SETTING A CASE SCHEDULE AND UNREASONABLY ACCELERATING THE *FINAL HEARING* WITHOUT ALLOWING FOR ANY PROSECUTION OF COUNTERCLAIMS.

(Emphasis sic.).

{¶ 15} The Hastings contend that the trial court violated their procedural due process rights through three principal errors: (1) failure to establish a case schedule under local rules; (2) inadequate notice regarding the August 8, 2024 hearing's scope; and (3) insufficient time between the June 28 preliminary-injunction denial and the August 8 final hearing. They emphasize that 21 days' notice of a final hearing, with clarification of its scope coming merely hours before, deprived them of meaningful opportunity to prepare, particularly for prosecuting their affirmative counterclaims.

{¶ 16} Questions of procedural due process invoke de novo review. *In re C.L.W.*, 2022-Ohio-1273, ¶ 48 (12th Dist.). This reflects the constitutional dimensions at stake: when due process is denied, both Section 16, Article 1 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution are implicated. *See State v. Hayden*, 2002-Ohio-4169, ¶ 6.

{¶ 17} The constitutional minimum for procedural due process comprises two essential elements: notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *State v. Cowan*, 2004-Ohio-4777, ¶ 8. But not every procedural irregularity rises to the level of constitutional infirmity. We must distinguish between harmless procedural missteps and those errors that fundamentally impair a party's substantial rights. As R.C. 2309.59 instructs, "In every stage of an action, the court shall disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No final judgment or decree shall be reversed or affected by reason of such error or defect." *Accord* Civ.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

{¶ 18} Fayette C.P., Gen.Div., Loc.R. 6.03(B) pertinently provides:

If service of process is completed and all parties have

answered, the Court will review the case and determine the appropriate case management plan. . . . In all cases where no jury demand has been filed, an assignment notice will issue setting the matter for trial to the Court.

This local rule was triggered on April 19, 2024, when the City timely answered the Hastings' counterclaims, completing the pleading phase. Yet the trial court failed to establish any case-management plan for over two months thereafter.

{¶ 19} Loc.R. 6.03(B) serves important due process functions beyond mere administrative convenience. Case management rules provide predictable litigation frameworks that enable parties to prepare adequately for trial. They prevent the very scenario that the Hastings allege occurred here: parties left in procedural limbo, uncertain when discovery should be conducted or trial preparation undertaken. The failure to provide case scheduling contributed materially to the compressed timeline that followed.

{¶ 20} But the critical period for due process analysis is not the entire litigation span but rather the period after the preliminary proceedings concluded. When the court denied the preliminary injunction on June 28, 2024, and simultaneously scheduled the permanent injunction hearing for July 19 (later continued to August 8), this created a six-week window for final preparation. This relatively short timeframe becomes more problematic when considered alongside the court's apparent failure to clarify the hearing's scope until August 7, less than 24 hours before the proceeding.

{¶ 21} It is true that the Hastings had approximately five and a half months—from the complaint's filing until the final hearing—to conduct discovery. Nothing barred them from doing so, as Civil Rules 33(A)(2), 34(B), and 36(B) authorize discovery upon commencement of the action. But when there is no case schedule or definitive trial date, parties may reasonably focus on pending motions rather than engaging in potentially premature discovery. The preliminary injunction proceedings consumed the parties'

attention from May through June, during which time conducting discovery on permanent injunction issues would have been inefficient and possibly wasteful.

{¶ 22} The Hastings' due process rights regarding their counterclaims merit separate analysis. Unlike their defensive posture against the City's claims, where they possessed intimate knowledge of their own property use and could readily respond to allegations, their counterclaims required affirmative proof of complex legal theories including constitutional taking and due process violations. These claims demanded different preparation: researching comparable property restrictions, potentially obtaining expert testimony on property valuation impacts, and developing evidence of the City's procedural failures.

{¶ 23} The August 7, 2024 entry provided the first clear indication that counterclaims would be adjudicated at the August 8 hearing. This gave the Hastings less than 24 hours to prepare for prosecuting their affirmative claims, a timeframe that falls well short of the "meaningful time and meaningful manner" standard required by *Cowan*. While the court's June 28 entry mentioned "whether a permanent injunction should issue," reasonable parties could interpret this as referring solely to the City's claims, not the Hastings' separate causes of action seeking affirmative relief.

{¶ 24} The Hastings rely on *State ex rel. DeWine v. Big Sky Energy, Inc.*, 2015-Ohio-2594 (11th Dist.). *Big Sky Energy* involved similar compressed scheduling after preliminary proceedings, where the court found due process violations despite a three-month window because parties were diligently engaging in discovery when the trial was set. *Big Sky Energy* at ¶ 2, 25. In the present case, the meaningful preparation period was even shorter—six weeks from the June 28 preliminary injunction denial to the August 8 hearing, with clarification of the scope coming at the last moment. The critical parallel lies not in total case duration but in the compression of preparation time after preliminary

matters concluded. *Big Sky Energy* demonstrates how courts can violate due process by accelerating proceedings without providing adequate notice and preparation time, regardless of theoretical opportunities that existed earlier in the litigation.

{¶ 25} The trial court and the City suggest that the Hastings' July 17, 2024 summary judgment motion constituted a representation that no genuine factual disputes remained, thereby waiving any claim to additional discovery time. But this characterization fails to account for the motion's basis. The Hastings' summary judgment motion rested specifically on the law-of-the-case doctrine, arguing that the court's preliminary injunction findings were dispositive of the City's claims. This legal argument about the preclusive effect of prior proceedings differs materially from a general assertion that no factual disputes existed.

{¶ 26} Moreover, the summary judgment motion addressed only the City's claims, not the Hastings' affirmative counterclaims. Filing a defensive motion based on legal preclusion cannot reasonably be construed as a waiver of preparation time needed to prosecute separate causes of action requiring different evidence and legal theories.

{¶ 27} But even assuming procedural errors occurred, we must also determine whether they affected the Hastings' substantial rights under R.C. 2309.59 and Civ.R. 61. *See Luttrell v. Younce*, 2011-Ohio-4458, ¶ 35 (2d Dist.) ("Harmless errors, that is, errors that do not affect substantial rights, must be disregarded by the reviewing court."), citing Civ.R. 61 and R.C. 2309.59. The harmless-error doctrine requires us to assess whether "substantial justice" was done despite procedural irregularities. R.C. 2309.59.

{¶ 28} Several factors support a finding that any scheduling irregularities did not deny the Hastings substantial justice. First, the core factual issues proved relatively straightforward, primarily whether construction equipment was stored on the property for business purposes. The Hastings ultimately stipulated to the presence of construction

equipment "on or about the property or the street in front," eliminating the need for extensive factual development on this central question.

{¶ 29} Second, the Hastings demonstrated their ability to participate meaningfully in the proceedings. They presented their case through witness examination, cross-examination of the City's witnesses, and comprehensive legal argument. They voiced only general objections to the proceeding without identifying specific evidence or witnesses that the compressed timeline prevented them from presenting.

{¶ 30} Third, regarding their counterclaims, the record reflects that the Hastings made strategic litigation choices rather than suffering from inadequate preparation time. They elected to rest without presenting affirmative evidence on their counterclaims, suggesting either that their claims were primarily legal in nature or that they chose not to pursue them vigorously regardless of time constraints.

{¶ 31} The essence of due process lies not in procedural perfection but in fundamental fairness under the totality of circumstances. While the court's deviation from local scheduling rules was far from ideal, and while the compressed timeline created legitimate concerns, these procedural shortcomings did not rise to the level of constitutional infirmity that would warrant reversal.

{¶ 32} The Hastings received constitutionally adequate notice of the proceedings and a meaningful opportunity to present their defense. The factual matters were straightforward, involving their own business operations and property use, which are matters within their direct knowledge and control. The legal issues, while important to the parties, did not involve complex factual development requiring extensive expert testimony or protracted discovery.

{¶ 33} Most significantly, the record fails to demonstrate concrete prejudice resulting from the scheduling decisions. The Hastings have not identified specific

discovery they were prevented from conducting, witnesses they could not secure, or evidence they could not develop due to time constraints. Without such showing, procedural irregularities alone cannot support reversal under the substantial-justice standard.

{¶ 34} The Hastings' first assignment of error is overruled.

**B. The Denial of Summary Judgment**

{¶ 35} The Hastings' second assignment of error states:

THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR SUMMARY JUDGMENT.

{¶ 36} In their second assignment of error, the Hastings contend that the trial court erred in denying their motion for summary judgment. Their argument rests on the law-of-the-case doctrine, which they claim required the trial court to adhere to its preliminary-injunction finding that the City failed to present clear and convincing evidence of a business operation in the Hastings' residence. According to the Hastings, this initial determination foreclosed further factual inquiry, leaving no genuine issue of material fact for resolution.

{¶ 37} We review summary-judgment decisions de novo, applying the same standard as the trial court. *Canter v. Kingdomwork, LLC*, 2024-Ohio-1231, ¶ 14 (12th Dist.). This requires us to determine whether: (1) no genuine dispute exists as to any material fact; (2) the moving party merits judgment as a matter of law; and (3) reasonable minds can reach only one conclusion adverse to the nonmoving party when viewing the evidence most favorably toward them. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 38} The law-of-the-case doctrine serves "'to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of

superior and inferior courts as designed by the Ohio Constitution.'" *Reid v. Cleveland Police Dept.*, 2017-Ohio-7527, ¶ 10, quoting *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St. 3d 402, 404, 1996-Ohio-174. As the Ohio Supreme Court explained in *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984), the doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."

{¶ 39} While *Reid* and *Nolan* address the doctrine's application to appellate rulings, Ohio courts have recognized that the doctrine may, in limited circumstances, apply to a trial court's reconsideration of its own prior determinations. *See Klaus v. Klosterman*, 2016-Ohio-8349, ¶ 15 (10th Dist.) (noting that trial courts may occasionally apply the doctrine to their own conclusions if issued in a final order and the prejudiced party elected not to appeal). But "'the law of the case doctrine should not be taken to imply that a trial court can never, under any circumstances, reconsider its prior ruling.'" *In re Estate of Porter*, 2017-Ohio-8840, ¶ 12 (10th Dist.), quoting *Clymer v. Clymer*, 1995 Ohio App. LEXIS 4303, *9 (10th Dist. Sept. 26, 1995). The doctrine does not preclude reconsideration when "'[a]dditional evidence, prior error or a change in circumstances might well argue against blind adherence to a prior ruling.'" *Id.*, quoting *Clymer* at *9.

{¶ 40} The Hastings' argument relies on their observation that this case proceeded under R.C. Ch. 3767 rather than Civ.R. 65. They note that both preliminary and permanent injunctions under R.C. Ch. 3767 require the same legal elements and the same clear-and-convincing burden of proof. *See State ex rel. Pizza v. Carter*, 63 Ohio Misc. 2d 235, 238 (C.P. 1993) (setting forth identical elements for preliminary and permanent R.C. Ch. 3767 injunctions). Under their theory, if a court finds that clear and convincing evidence is lacking for an R.C. Ch. 3767 preliminary injunction, that same finding should preclude a subsequent determination that clear and convincing evidence

supports an R.C. Ch. 3767 permanent injunction.

{¶ 41} This argument, though, does not account for the fundamental distinction between preliminary and permanent injunctive proceedings, which is a distinction that exists regardless of whether relief is sought under R.C. Ch. 3767 or Civ.R. 65. As the U.S. Supreme Court has observed, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Given this limited purpose, preliminary injunctions typically issue "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," and a party "is not required to prove his case in full at a preliminary-injunction hearing." *Id*.

{¶ 42} Most significantly, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id*. Ohio courts have consistently embraced this principle. *See, e.g., Chad M. Leonard Holdings, Inc. v. Rohaley*, 2023-Ohio-4096, ¶ 68 (11th Dist.) (stating that "'[f]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits'"), quoting *Ohioans for Concealed Carry, Inc. v. Columbus*, 2020-Ohio-6724, ¶ 57; *Hosta v. Chrysler*, 2007-Ohio-4205, ¶ 31 (2d Dist.) (recognizing that preliminary injunctions "'are generally regarded as being superseded by a final judgment that is rendered on the merits in the underlying controversy'"), quoting *Burns v. Daily*, 114 Ohio App.3d 693, 708 (11th Dist. 1996). This principle logically must apply whether the preliminary injunction is granted or denied, because the determination reflects the incomplete evidentiary record available at that stage of proceedings. *See Camenisch* at 395.

{¶ 43} An examination of the trial court's June 28, 2024 entry reveals that its denial of the preliminary injunction rested on factual findings based on incomplete evidence

rather than definitive legal conclusions about the ultimate merits. The court found that "the Relator has failed to establish by clear and convincing evidence that the Respondents are using the property at 1045 Damon Drive to operate a business." Critically, this determination was expressly premised on the limited evidence available at that stage: "No temporary restraining order or preliminary injunction shall be issued by the Court *at this time*." (Emphasis added.). The order explicitly contemplated future proceedings "on the issue as to whether the property is a public nuisance and on the issue of whether a permanent injunction should issue." The court's language indicates a preliminary assessment based on the then-existing record, not a final adjudication that the Hastings could never be found to operate a business from their property. This distinction is crucial for law-of-the-case analysis, as the doctrine typically applies to final legal determinations rather than provisional factual assessments subject to supplementation through additional evidence.

{¶ 44} At the August 8, 2024 final hearing, the City introduced substantial additional evidence that was not available during the preliminary-injunction proceedings. This included testimony from five neighbors who provided firsthand accounts of the Hastings' use of their property for business purposes. One neighbor testified to observing what appeared to be employees "coming and going every day" and specifically described seeing people "coming early of the morning getting in the trucks that were parked along the highway, leaving their trucks there." Other witnesses corroborated the regular presence and storage of construction equipment over extended periods.

{¶ 45} This additional evidence addressed aspects of the alleged zoning violation that were not fully developed at the preliminary hearing. While both proceedings concerned whether the Hastings operated a business from their residence, the August hearing provided a more complete evidentiary picture, particularly regarding the

coordination of employee activities and the systematic use of the property as a staging area for commercial operations.

{¶ 46} The trial court correctly articulated the governing principle in its August 7, 2024 entry: "This Court finds that there is a distinction between a preliminary injunction and a permanent injunction, thus the findings from a preliminary injunction hearing are not binding on the hearing for a permanent injunction. . . . [T]he parties are not limited to that evidence alone." This reasoning comports with both Ohio and federal precedent recognizing that preliminary injunction determinations, whether favorable or unfavorable to the moving party, do not bind subsequent proceedings on the merits. *See McNamara v. Wilson*, 2014-Ohio-4520, ¶ 46 (12th Dist.) (noting that preliminary determinations do not constitute "a final adjudication on any issue").

{¶ 47} The Hastings' reliance on the identical burden of proof under R.C. Ch. 3767 does not alter this analysis. Even if both preliminary and permanent proceedings under the statute require clear and convincing evidence, this shared standard does not transform a preliminary assessment based on incomplete evidence into a final determination that precludes consideration of additional proof. The evidentiary standard applies to each proceeding independently, based on the evidence presented at that particular stage.

{¶ 48} Because preliminary findings do not constrain subsequent proceedings on the merits under either Ohio or federal law, and because the law-of-the-case doctrine does not foreclose consideration of additional evidence in such circumstances, the trial court committed no error in denying the Hastings' motion for summary judgment.

{¶ 49} The Hastings' second assignment of error is overruled.

**C. The Trial Court's Jurisdiction and the Sufficiency of the Evidence**

{¶ 50} The Hastings' third assignment of error states:

- 15 -

THE TRIAL COURT ERRED IN FINDING CLEAR AND
CONVINCING EVIDENCE THAT APPELLANTS OPERATE
AN UNPERMITTED HOME OCCUPATION.

{¶ 51} The Hastings' final assignment of error challenges both the trial court's jurisdiction and the sufficiency of the evidence supporting the court's finding that the Hastings operated an unpermitted home occupation. They present two main arguments: (1) the trial court lacked jurisdiction to determine violations of the City's zoning ordinance because such determinations are within the exclusive jurisdiction of municipalities under Ohio's home rule authority, and the City failed to issue a final administrative order; and (2) even if the court had jurisdiction, the City failed to present clear and convincing evidence that the Hastings were operating an unpermitted home occupation.

## 1. Jurisdiction to Determine Zoning Violations

{¶ 52} The Hastings contend that home-rule municipalities possess exclusive authority over zoning violations and that the trial court lacked jurisdiction because the City failed to issue a final administrative order determining a violation before seeking judicial relief.

{¶ 53} Ohio's home-rule amendment provides that "municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Ohio Const. art. XVIII, § 3. While zoning ordinances constitute an exercise of municipal police power under this provision, *Garcia v. Siffrin Residential Assn.*, 63 Ohio St.2d 259, 270 (1980), nothing in this constitutional language suggests municipalities possess exclusive jurisdiction over zoning determinations to the exclusion of judicial authority. Rather, it establishes concurrent powers.

{¶ 54} The Hastings' reliance on *Walker v. Toledo*, 2014-Ohio-5461, and *Macdonald v. Cleveland*, 2015-Ohio-2147 (8th Dist.), is misplaced. Both cases address

situations where individuals sought to challenge municipal actions without first exhausting administrative remedies available to them, which is a fundamentally different procedural posture than municipalities themselves seeking statutory judicial relief. *Walker* specifically involved a property owner challenging a municipal decision, requiring exhaustion of available administrative appeals. In the present case, the City affirmatively sought judicial enforcement under express statutory authority, not review of its own administrative determinations.

{¶ 55} We acknowledge that some municipalities, as illustrated in *Hamilton v. Ebbing*, 2012-Ohio-2250 (12th Dist.), and *Hamilton v. Digonno*, 2013-Ohio-151 (12th Dist.), have issued notices of violations and conducted administrative hearings before initiating nuisance-abatement actions. But these cases establish prudent administrative practices rather than mandatory jurisdictional prerequisites. The existence of administrative procedures does not foreclose the separate judicial remedy explicitly provided by statute, particularly where the statutes contain no exhaustion requirement.

{¶ 56} The City's own zoning ordinance establishes a specific enforcement mechanism. Section 2.01.03(E) of the Zoning Ordinance provides that the Building and Zoning Inspector shall "take all necessary steps to remedy conditions found in violation by ordering, in writing, the discontinuance of illegal uses or work in progress, and direct cases of noncompliance to appropriate City Official for action." While the Inspector issued a notice of violation on October 31, 2023, the Hastings argue (and the City appears to concede) that no final administrative order was ever issued determining that they violated the zoning ordinance.

{¶ 57} The Hastings cite *State ex rel. Eckstein v. Video Express*, 119 Ohio App.3d 261, 268 (12th Dist. 1997), quoting *State ex rel. Albright v. Delaware Cty. Court of Common Pleas*, 60 Ohio St.3d 40, 42 (1991), which held that "actions for declaratory

judgment [are] inappropriate where 'special statutory proceedings' would be bypassed." This principle suggests that when a municipality has established specific administrative procedures for enforcement, those procedures should ordinarily be exhausted before seeking judicial relief. But the exhaustion doctrine is one of judicial restraint rather than jurisdictional limitation and is designed to "prevent premature interference with the administrative processes." *Basic Distrib. Corp. v. Ohio Dept. of Taxation*, 94 Ohio St.3d 287, 290, 2002-Ohio-794. Critically, "where there is a judicial remedy that is intended to be separate from the administrative remedy, the requirement of exhaustion of administrative remedies does not apply." *Id*. In other words, this prudential doctrine cannot supplant explicit statutory grants of authority.

{¶ 58} The Ohio Legislature has provided municipalities with an enforcement mechanism in R.C. 3767.03, which expressly provides that "[w]henever a nuisance exists, the . . . city director of law . . . or any person who is a citizen of the county in which the nuisance exists may bring an action in equity in the name of the state . . . to abate the nuisance and to perpetually enjoin the person maintaining the nuisance from further maintaining it." The statutory language created independent legal pathways for seeking injunctive relief, which are separate and distinct from a municipality's administrative enforcement regime. Notably absent from the statute is any prerequisite requiring municipalities to issue final administrative determinations before invoking judicial remedies.[2]

{¶ 59} Therefore, the trial court properly exercised jurisdiction over the City's nuisance-abatement action under R.C. 3767.03.

---

2. Similarly, R.C. 713.13 grants municipalities the right to bring suit for an injunction against zoning violations "in addition to any other remedies provided by law." The phrase "in addition to any other remedies provided by law" particularly suggests that judicial relief supplements rather than supplants administrative enforcement.

## 2. Sufficiency of the Evidence

{¶ 60} Turning to the sufficiency of evidence, the Hastings challenge the trial court's finding that clear and convincing evidence established they operated an unpermitted home occupation in violation of the City's zoning ordinance. We must first consider the applicable evidentiary standard. The parties and trial court proceeded under a clear-and-convincing-evidence standard, but this warrants examination.

{¶ 61} "It is established law in Ohio that, when a statute grants a specific injunctive remedy to an individual or to the state, the party requesting the injunction 'need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law[.]'" *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51, 56 (1978), quoting *Stephan v. Daniels*, 27 Ohio St. 527, 536 (1875). "Therefore, statutory injunctions should issue if the statutory requirements are fulfilled." *Columbus Steel Castings Co. v. King Tool Co.*, 2011-Ohio-6826, ¶ 66 (10th Dist.), citing *id*. at 57.

{¶ 62} R.C. 3767.03 does not specify a burden of proof, leading to some uncertainty in the case law. *Compare New Holland v. Murphy*, 2019-Ohio-2423, ¶ 27 (4th Dist.) (applying preponderance standard where statute is silent) *with State ex rel. Dewine v. ARCO Recycling, Inc.*, 2022-Ohio-1758, ¶ 63 (8th Dist.) (applying clear-and-convincing standard). However, where, as here, the parties proceeded under the more-difficult-to-satisfy clear-and-convincing-evidence standard and the record amply supports that standard, we need not resolve this question definitively. *See State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990) (explaining that "[t]he standard of 'clear and convincing evidence' is defined as 'that measure or degree of proof which is more than a mere "preponderance of the evidence"'"), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 63} The evidence amply supports the trial court's finding of a zoning violation. The property is zoned R-1A, which permits only "one-family detached dwellings," Zoning Ordinance of the City of Washington, Ohio 10.02. Under Section 10.04 of the Ordinance, home occupations are permitted only as conditional uses, subject to the regulations of Section 25.08. Rod Bryant, the Building and Zoning Inspector, testified that a conditional-use permit is needed to operate a home occupation. It is undisputed that the Hastings never obtained a conditional-use permit for a home occupation.

{¶ 64} Section 3.01 prohibits any land from being "changed in use according to zoning category, wholly or partly" without proper permits. The Zoning Ordinance defines "use" as "the purpose for which . . . land . . . may be occupied or maintained." Zoning Ordinance of the City of Washington, Ohio 33.02. The evidence established that the Hastings regularly used their residential property to store commercial concrete equipment, constituting a change in use requiring proper permits.

{¶ 65} The Hastings argue that they merely "parked" equipment rather than "operated" a business, but this reflects a distinction without meaningful difference under the applicable zoning provisions. The critical question is not the semantic characterization of the activity, but whether the use of the property exceeded what is permitted in an R-1A district.

{¶ 66} The evidence from the August 8, 2024 hearing reveals a pattern of business-related activity extending well beyond incidental equipment storage. Bryant, the zoning inspector, testified to observing construction equipment at the property "constantly" over an extended period—equipment that was not being used for the construction of the Hastings' home. Five neighbors corroborated this testimony, with one neighbor specifically describing apparent employee coordination: people "coming early in the morning getting in the trucks that were parked along the highway, leaving their trucks

there."

{¶ 67} The Hastings relied for a defense on their active building permit. But while they received a temporary occupancy permit in September 2023, the only remaining construction item was the concrete sidewalk. Bryant testified that this sidewalk was not completed until March 2024. Critically, the equipment observed "constantly" during this period included items that were not being used for the residence's or sidewalk's construction but rather for the Hastings' separate commercial concrete business.

{¶ 68} The Zoning Ordinance does permit "[t]emporary buildings for uses incidental to construction work, which shall be removed upon completion or abandonment of the construction work." Zoning Ordinance of the City of Washington, Ohio 10.03(C). But this provision contemplates temporary structures and equipment actually being used for on-site construction, not the indefinite storage of commercial equipment belonging to an off-site business operation. The evidence showed that the observed equipment remained at the property both during active construction periods and during extended periods of construction inactivity, supporting the trial court's finding that this use exceeded what was incidental to legitimate construction activity.

{¶ 69} We acknowledge that the most direct evidence of business operations, the testimony of the neighbor who saw what appeared to be employee activity, included his concession on cross-examination that he did not know with certainty whether the individuals he observed were employees. But this admission does not wholly undermine the probative value of his testimony, particularly when considered alongside consistent accounts from multiple witnesses regarding the regular presence of construction equipment unrelated to ongoing residential construction.

{¶ 70} The trial court, positioned to directly observe witness testimony and assess credibility, could reasonably conclude from the totality of evidence that the Hastings' use

- 21 -

of their property exceeded incidental residential use and constituted an unpermitted home occupation. The combination of equipment storage, apparent employee coordination, and the extended timeline beyond legitimate construction needs provides clear and convincing evidence of prohibited business use.

{¶ 71} Clear and convincing evidence supports the trial court's finding that the Hastings operated an unpermitted home occupation in violation of the City's Zoning Ordinance. The trial court properly exercised jurisdiction under R.C. 3767.03, and the evidence amply demonstrates a pattern of commercial equipment storage and apparent business coordination that exceeded permitted residential use in an R-1A district.

{¶ 72} The third assignment of error is overruled.

### III. Conclusion

{¶ 73} We have overruled the three assignments of error presented. The trial court afforded the Hastings appropriate due process, correctly applied the law regarding preliminary and permanent injunctions, and based its decision on clear and convincing evidence.

{¶ 74} Judgment affirmed.

HENDRICKSON, P.J., and SIEBERT, J., concur.

## JUDGMENT ENTRY

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Fayette County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Matthew R. Byrne, Judge

/s/ Melena S. Siebert, Judge